Carroll,
Feb. 7, 1922.

### WILLIAM PITMAN, *Adm'r*, v. HELEN B. MERRIMAN.

In an action upon P. S., c. 191, ss. 8–13, for negligently causing death, the amount which the intestate could have earned for his estate is what would remain after deducting the necessary expense of his own living.

Upon a general exception to a charge, the question whether it was susceptible of a different construction will not be considered.

CASE, for negligently causing the death of the plaintiff's intestate. Trial by jury before *Allen*, J., with verdict for the plaintiff.

The charge to the jury contained the following: "The third element of damages is for loss of earning capacity in connection with which the decedent's age and his probable duration of life are to be considered, as well as anything else disclosed by the evidence which bears on the question. . . . This earning capacity is the capacity to earn money for one's estate, and that means what one is able to be worth to his estate — in other words what one would be able to save from what he would be able to earn over and above what it would cost him to live. His net saving ability from the time of his coming of age during his probable duration of life would measure the extent of this element of damage."

The plaintiff excepted "to the statement that what it would cost to live is to be taken into consideration in determining the damages to the estate."

Transferred from the May term, 1921, of the superior court.

*William N. Rogers* (by brief and orally), for the plaintiff.

*Arthur O. Fuller* and *Loring, Coolidge & Noble* (of Massachusetts) (*Mr. Fuller* and *Mr. Noble* orally), for the defendant.

PARSONS, C. J.    This action for negligently causing the death of the plaintiff's intestate is brought under ss. 8–13, c. 191, P. S.    Except for the provincial highway statute, the first modification in this state of the common law rule that the death of a human being could not constitute a cause of action, is found in the statute c. 953, Laws 1850, s. 7, authorizing a proceeding by way of indictment against a railroad in case of loss of life by a person not in their employment, through the negligence of the railroad or its servants.    *Piper* v. *Railroad*, 75 N. H. 435, 443.    The contention of counsel for the plaintiff

that the source of this act is to be found in the Massachusetts act of 1840, *c.* 80 rather than in the English act passed in 1846 (9 & 10 Vict. *c.* 93), usually called Lord Campbell's act, is probably well founded. But if this be so, the conclusion sought to be based thereon that the theory of the act of 1850 or of the existing legislation is punitive rather than compensatory is not sustained by the judicial construction of that act or the subsequent amendatory action of the legislature. Whatever the theory of subsequent adjudication and legislation in Massachusetts (*Hudson* v. *Railroad*, 185 Mass. 510; *Carey* v. *Railroad*, 1 Cush. 475), the purpose of the act was here held to be compensation. The idea of punishment is not referred to in subsequent adjudication or legislation. In *State* v. *Railroad*, 52 N. H. 528, it was held that the proceeding though criminal in form was to be considered and treated as a civil action for the recovery of damages; that it was not intended to punish the defendants but to make them "liable in damages to the family and heirs of the deceased for the injury done to them in depriving them of one upon whom they leaned for support and guidance." *Ib.* 548. As stated by Judge *Perley* in *State* v. *Gilmore*, 24 N. H. 461, 471, "The law in substance provides a method for recovering a sum for the benefit of the surviving relatives of one whose life has been lost by carelessness or negligence, on the ground that the surviving relatives have suffered an injury that ought to receive a pecuniary compensation." In the same case it was held that, as the fine to be imposed upon a conviction was to be given the relatives of the deceased, if the deceased left no relatives, no fine could be imposed. Under the present statute in such situation no damages can be recovered. *Hinman* v. *Director General of Railroads*, 79 N. H. 518. The indictment in *State* v. *Railroad*, 52 N. H. 528 was properly tried, it was held, precisely as if it had been a civil suit by the deceased for injury not resulting in death. The state was required to prove the defendant's fault and the deceased's absence of fault as cause for the injury. The distinction found in Massachusetts between this legislation and Lord Campbell's act (*Carey* v. *Railroad*, *supra*) was not here followed, but the New Hampshire statute appears to have been administered on the lines of the English act, under which the defendant's liability depended upon the existence of a right of action in the deceased, (*Senior* v. *Ward*, 1 El. & El. 385,) and the purpose of the act was considered to be compensation to the relatives of the deceased for loss sustained by the death. *Blake* v. *Railway*, 18 Q. B. 93; *Franklin* v. *Railway*, 3 H. & N. 211; *Dalton* v. *Railway*, 4 C. B. (N. S.) 296.

In the amendments and reënactments of the act in 1879 and 1887, the form of procedure found in the Massachusetts act was abandoned and the English procedure of a suit by the administrator of the deceased adopted. This fact and expressions apparently taken directly from the English act show conclusively the dependence of the present statute upon Lord Campbell's act. All that remained of the Massachusetts act after these amendments was the provision for the distribution of the damages recovered. The act of 1879, *c.* 35, *s.* 1, which repealed the act of 1850 gave the administrator a right of action for the injury, but the damages were limited to such as the deceased might have recovered. *French* v. *Company*, 66 N. H. 90, 98; *Corliss* v. *Railroad*, 63 N. H. 404; *Clark* v. *Manchester*, 62 N. H. 577. In 1887, the statute acquired substantially its present form. "When the death of a person is caused by a wrongful act or neglect of another, which, if death had not ensued, would have entitled the person injured to recover damages therefor, then, on the death of such person, his executor or administrator may, . . . recover damages for the injury to the person and estate of such person caused by such wrongful act or neglect and consequent death, and although the death is caused under such circumstances as amount, in law, to felony. In assessing said damages there shall be considered the mental and physical pain of the injured person, the expense occasioned to him in his life and to his estate upon his decease, his age, and his probable duration of life and earning capacity but for said wrongful act or neglect." Laws 1887, *c.* 71, *s.* 1.

"The statute recognizes a wrong to the family of a deceased person, and gives an additional cause of action. In addition to the injury to the deceased and to his estate, there may be recovered the injury to his family occasioned by his death. The word 'injury' in section 1 includes (1) the injury to the person injured until he dies, and (2) the injury to his widow, children, or heirs by reason of his death." *French* v. *Company, supra*, 98. The injury to the deceased's relatives is worked out through the diminution of his estate because of the destruction of his ability to create one. As bearing thereon, his expectation of life and his earning capacity are named as factors for consideration. While his earning capacity for himself would be the gross amount he could obtain as the fruit of his efforts or service in any capacity, the amount which he could earn for his estate or the benefit of others would be what remained after deducting the necessary expense of his own living. His earning capacity which tends to augment his estate or to permit him to aid those naturally dependent

upon his bounty is necessarily his net earning capacity; his capacity to acquire money less the necessary expense of acquisition. The statute was so construed in *Carney* v. *Railway*, 72 N. H. 364, 376, in 1903 as a guide for another trial. This rule it is believed has ever since been consistently applied. *Dillon* v. *Railway*, 73 N. H. 367. In *Imbriani* v. *Anderson*, 76 N. H. 491, damages were assessed upon the basis of the deceased's probable capacity to earn money above his living expenses and the contention that recovery should be diminished by what the deceased might have expended in maintaining a family was overruled upon the ground that the question was of capacity to earn and not of opportunity and inclination to save.

The instruction in this case to which exception was taken is, "The third element of damages is for loss of earning capacity in connection with which the decedent's age and his probable duration of life are to be considered, as well as anything else disclosed by the evidence which bears on the question. . . . This earning capacity is the capacity to earn money for one's estate, and that means what one is able to be worth to his estate. In other words what one would be able to save from what he would be able to earn over and above what it would cost him to live. His net saving ability from the time of his coming of age during his probable duration of life would measure the extent of this element of damage." This instruction is not entirely clear. It is capacity to earn and not ability to save which the statute prescribes as a basis of damages. *Imbriani* v. *Anderson, supra.* But although it may be argued that the instruction was liable to misconstruction by the use of the term, net saving ability, reference to the preceding sentence tends to show that in the use of the expression "saving ability" and being "able to save" the thought in mind was of the earnings that would be left after deducting "what it would cost him to live." The charge was clearly so understood at the trial for no exception was taken to the reference to "saving ability" or to the expression "what one would be able to save from what he would be able to earn over and above what it would cost him to live." The plaintiff excepted "to the statement that what it would cost to live is to be taken into consideration in determining the damages to the estate." This exception definitely informed the court that he had been understood to charge the jury in accordance with its terms and questioned only the legal soundness of the proposition excepted to. As this proposition correctly stated the law, the exception must be overruled. If the language of the charge now appears susceptible

of a different construction in conflict with the rule of *Imbriani* v. *Anderson, supra,* the matter was not called to the attention of the court. As the objection was not seasonably presented to the court, the plaintiff could not now raise the question under a general exception. *Mason* v. *Railway,* 79 N. H. 300, 305. As he neither objected nor excepted on this ground, the question is not before the court. *Alden Speares Sons Co.* v. *Railroad, ante,* 243. The plaintiff's exception is overruled.

As the defendant waives the exception to argument of counsel, the plaintiff has

*Judgment on the verdict.*

All concurred.