Merrimack, }
Oct. 1, 1929. }

### JOSEPH MORRELL, *Adm'r v.* HENRY GOBEIL.

*John M. Stark* and *David F. Dudley* (*Mr. Dudley* orally), for the plaintiff.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Jonathan Piper* orally), for the defendant.

PEASLEE, C. J.   Whether a verdict should be set aside as against the weight of the evidence "is a question of fact for the trial court which has been decided adversely to the defendants.   But such a decision presents the question whether it could reasonably be made and may be set aside when it is apparent the trier of fact unwittingly fell into a plain mistake." *Ingerson* v. *Railway*, 79 N. H. 154, 159.

The issue before the presiding justice was that stated in *Bennett* v. *Larose*, 82 N. H. 443, 448.   ". . . whether the evidence in favor of the plaintiff is of such overwhelming weight that everyone must find in her favor, and nothing but mistake, partiality or corruption could account for the verdict."   If the evidence was not such that it could be so found, the exception to the order setting the verdict aside must be sustained.

The evidence was conflicting.   The decedent was twenty years old and in good health.   If conscious suffering could have been found, there certainly was sufficient evidence to the contrary.   There was testimony that he was a steady worker at good wages.   This came from an interested witness, whose other testimony was self-contradictory; and his father, who was his alleged employer, was present in court and did not testify.   There was other evidence that the decedent was a common street loafer, who had been sentenced for petty larceny and had on other occasions been admonished by the police.

Damage for loss of earning capacity is to be determined by an appraisal of the loss to the decedent's estate.   What would he probably have earned over and above his own living expenses?   The statute makes his capacity to earn an element to be considered in assessing the damage.   *Dillon* v. *Company*, 73 N. H. 367.   But although capacity is thus made material, it is not declared to be the measure of the damage.   The loss to the estate by the destruction of that capacity is the measure.

This is more plainly evident in the language of the original statute; which provides that "damages for the injury to the . . . estate" may be recovered, and that in assessing them his earning capacity "shall be considered."   Laws 1887, c. 71, s. 1.   The changed phraseology of the present section (P. S., c. 191, s. 12; P. L., c. 302, s. 12) was not intended to express any different thought.   *Carney* v. *Railway*, 72 N. H. 364, 376.

If the decedent was a drunken loafer, who though physically able probably would never do a day's work, there would be no loss to his estate if his earning capacity were cut off.

The statute does not require that damages be assessed as though his capacity would be fully employed. It was not the intent of the act to create fictitious values, where none existed. "The New Hampshire statute appears to have been administered on the lines of the English act, under which . . . the purpose of the act was considered to be compensation to the relatives of the deceased for loss sustained by the death." *Pitman* v. *Merriman*, 80 N. H. 295, 296.

In the cases where this provision has been considered, this precise question has not been involved. In *Carney* v. *Railway*, 72 N. H. 364, the issue was as to proper instructions to the jury in the case of an infant decedent. Elements to be considered in estimating earning capacity were stated, but they all related to deduction from gross earnings. The method of ascertaining total earnings was not considered.

In *Dillon* v. *Company*, 73 N. H. 367, it was decided that the fact that a capable decedent probably would not have earned money did not disprove earning capacity, and that the value of such capacity was to be ascertained by the jury. In that case the decedent was a married woman, who rendered valuable household service to her husband, though without financial compensation. This would seem to be "earning capacity which tends to . . . permit him to aid those naturally dependent upon his bounty." *Pitman* v. *Merriman*, 80 N. H. 295, 298. Its loss is as great as that of financial aid contributed from outside earnings. It results in either case from destruction of earning capacity. Considered in the light of the facts then before the court, the language used does not mean that there can be a recovery beyond damage done. Neither of these cases furnishes any ground for the contention that the loss to the estate is to be assessed upon the basis of a full use of the capacity.

*Imbriani* v. *Anderson*, 76 N. H. 491, decides that while the expense of maintaining the decedent—the cost of production—is to be deducted, expenses of maintaining a family are not to be. The statement therein that "the question is of capacity to earn, not of disposition to earn or of opportunity and inclination to save" (*Ib.* 492), was made in the course of the discussion of the proposition that recovery is not limited to the amount of estate the decedent would have left but for the defendant's wrong. The expression "disposition to earn" should have been omitted. The question was not involved

in the case. The gross value of earning capacity was not in controversy. The statement is *dictum*, and it does not indicate the true rule, or at least not the whole of it.

Disposition to earn may perhaps be said not to be the test, but it is a material fact to be considered in ascertaining the amount of loss sustained. As before stated, the object of the statute is compensation for loss. It does not undertake to go beyond that.

The intent of our early statutes upon this subject to grant a recovery "on the ground that the surviving relatives have suffered an injury that ought to receive a pecuniary compensation" (*State* v. *Gilmore*, 24 N. H. 461, 471), has been a controlling factor, and is so now. *Pitman* v. *Merriman*, 80 N. H. 295.

It may be argued that one's capacity is his own to do with as he wills, and that he is entitled to compensation accordingly. *Memphis &c. Company* v. *Letson*, 135 Fed. Rep. 969. But the common-law rule is otherwise. The evidence must warrant a finding of probability of earning. *Guevin* v. *Railway*, 78 N. H. 289, 298.

"The ground on which one is entitled to recover for loss of earning capacity is what the party not only can earn, but probably will earn, to the extent of his or her capacity." *Saunders* v. *Company*, 252 Pa. St. 79.

"The measure of damages for loss or impairment of earning capacity is the difference between the earning capacity before and after the accident, and this depends not only on the actual earning capacity, but on the use of it. However, it would seem that a jury of ordinary capacity would understand this without explicit instructions from the court." *Cook* v. *Company*, 61 Wash. 118.

In *Guevin* v. *Railway*, *supra*, it was assumed that the *Carney*, *Dillon* and *Imbriani* cases had changed the common-law rule in death cases; and as that fact sufficiently distinguished those authorities, they were not examined further. The question whether the change made by the statute goes to the extent of making earning capacity the test, to the exclusion from consideration of a probability that the capacity will be used, is now presented for decision for the first time.

Even if it were conceded that the foregoing statement of the common-law rule unduly limits a recovery by the injured party, it would not affect the result here. The situation is different in the case of those who might have hoped to benefit by the industry of the person who has been killed. The right to work or not was his, not theirs. Their only prospective right or interest in his earnings was to what

he would spend upon them or leave as an estate. Except indirectly as to his wife and children (P. L., *c.* 288, *ss.* 14-19) they have no right to demand that he shall work. Their gains would depend to some extent upon his disposition to work.

An application of this distinction is seen in the fact that while their recovery is limited to net earning, he recovers the gross amount. *Pitman* v. *Merriman,* 80 N. H. 295, 297.

So far as what was said in *Imbriani* v. *Anderson, supra,* gives countenance to the idea that disposition to earn is immaterial in assessing the damage in these death cases, it is overruled. For the reasons stated, this factor is to be taken into account in assessing the damage to the estate by reason of loss of the decedent's earning capacity.

The jury were instructed in harmony with the foregoing conclusions. They were told that recovery was measured by what he would have earned. The idea that what he could have earned is the test was not suggested. Applying this rule, it is evident that the jury were fully justified in not returning a larger verdict. This decedent had capacity to earn money. What was it worth to those who might benefit by his labor? If he was what the defendant's evidence tended to prove he was, it was in fact worth nothing to them. The statute was not designed to give them something they never would have had, or compensation for something they did not lose.

The finding "that the jury ignored the rule as to measure of damages given them in the charge, and that the verdict is manifestly insufficient" cannot be sustained. The order setting aside the verdict is reversed.

*Judgment on the verdict.*

All concurred.