Maria T. SOARES, Administratrix of the Estate of Paul Jeorge Soares, (Deceased), For and In Behalf of said Estate and For and In Behalf of Laurenio M. Soares and Maria R. Soares, next of kin and heirs at law of said Paul Jeorge Soares

v.

John McCLOSKY, alias John Doe.

Civ. A. No. 77–1617.

United States District Court,
E. D. Pennsylvania.

Feb. 16, 1979.

Edward B. McDaid, Philadelphia, Pa., for petitioners.

Edward John Mulligan, Pawtucket, R. I., for respondent.

## OPINION

POLLAK, District Judge.

On May 22, 1976, Paul J. Soares was fatally injured in a two-car collision on a Pennsylvania highway. At his death, Paul Soares, a young man who had recently completed college, was still a citizen of Rhode Island—the State in which he had grown up, and where other members of his family still resided—although he had taken a job in Pennsylvania (Pottstown) and was temporarily living in Delaware (Newark). He died intestate; and a few weeks after his death, a Rhode Island Probate Court appointed his sister, Maria T. Soares, administratrix of his estate. In 1977, she brought suit in this Court against John McClosky, a citizen of Pennsylvania who was the driver of the other car involved in the accident. This diversity action, arising out of Paul Soares' death, was brought by the administratrix on behalf of her brother's estate and on behalf of their parents, Laurenio Soares and Maria R. Soares. In January, 1978, the administratrix petitioned this Court for approval of a proposed settlement. The settlement provided that the defendant would pay $60,000.00, to be divided into three parts: $20,000.00 for counsel fees; $13,-333.33 to Laurenio Soares; and "the balance [$26,666.67] to Maria R. Soares, the mother of the decedent, or Maria R. Soares and Maria T. Soares, sister of the decedent and the administratrix equally."

Soon thereafter, Laurenio Soares—who has been divorced from Maria R. Soares since 1973—filed a memorandum opposing the proposed distribution and asserting his entitlement, as a surviving parent of an unmarried son, to one-half of the proceeds of the settlement after deduction of attorneys' fees and expenses. After hearing oral argument, Judge Fogel, on May 1, 1978, in one of his last orders before leaving this Court, approved the distribution proposed by the administratrix.

Three days later—on May 4, 1978—a deputy clerk of this Court entered an order dismissing the case with prejudice, pursuant to our Local Rule 23(b).[1]

On July 25, 1978, Laurenio Soares moved to set aside the Local Rule 23(b) dismissal and to vacate Judge Fogel's order of May 1, approving the distribution.

Because Judge Fogel was no longer on the bench when Laurenio Soares' motion was filed, the case remained dormant until it was placed on my calendar after I joined the Court in September of 1978.

## I.

The administratrix advances three arguments challenging this Court's power to entertain Laurenio Soares' motion:

■ 1. The administratrix contends that this Court's subject matter jurisdiction has eroded, in that (1) the current distributional dispute only involves citizens of Rhode Island, and (2) the $6,666.67 ($20,000.00 minus $13,333.33) in incremental recovery sought by Laurenio Soares is less than the $10,000.00 jurisdictional minimum. But the contention is without force. Whether the elements of jurisdiction are present is determined "once and for all at the threshold and if found to be present . . . continues until final disposition of the action." *Dery v. Wyer*, 265 F.2d 804, 808 (2d Cir. 1959).

*Accord*, 13 *Wright, Miller & Cooper, Federal Practice and Procedure*, § 3608.

■ 2. The Local Rule 23(b) order of dismissal was entered on May 4, 1978, and the motion to set it aside was filed on July 25, 1978, within the ninety-day period specified in the Rule. The administratrix argues, nonetheless, that the motion is time-barred, claiming that (1) Judge Fogel's May 1, 1978 order approving the proposed distribution was a final order closing the case; (2) the May 4 order of dismissal was therefore superfluous and without legal effect; (3) as a result the ninety-day grace period provided in Rule 23(b) did not apply to this case; and (4) Mr. Soares' only recourse was to appeal the May 1 order to the Court of Appeals—an avenue foreclosed by the running of the appeal time well before July 25. The difficulty with this argument is that the established practice in this Court does not treat an order such as that entered on May 1 (approving the proposed distribution) as a final order; following the entry of such an order the Clerk (or a Judge) regularly enters an order of dismissal pursuant to Rule 23(b).[2] And, indeed, in reliance on the established practice, counsel on all sides of this very case evidently proceeded on the understanding that Laurenio Soares had ninety days from May 4 to seek to reopen the distribution issue.[3]

1. That Rule provides as follows:
 Whenever in any civil action counsel shall notify the Clerk or the judge to whom the action is assigned that the issues between the parties have been settled, the Clerk shall, upon order of the judge to whom the case is assigned, enter an order dismissing the action with prejudice, without costs, pursuant to the agreement of counsel. Any such order of dismissal may be vacated, modified, or stricken from the record, for cause shown, upon the application of any party filed within ninety (90) days of the entry of such order of dismissal.

2. For this information, I am indebted to Mr. Robert E. Gohery, Case Processing Supervisor in the Office of the Clerk.

3. On May 12, 1978, John S. Kokonos, Esq., counsel for defendant McClosky, wrote a letter to Edward J. Mulligan, Esq., the administratrix's Rhode Island counsel, in which he noted that "It appears that Federal Rule 23b of the

local rules of the United States District Court for the Eastern District of Pennsylvania does give Laurenio Soares a 90 day period to file to set aside the dismissal with prejudice but with cause." According to that letter, Mr. Kokonos, on May 11, spoke with A. J. Brosco, Esq., the Rhode Island attorney who represented Mr. Soares before Judge Fogel, advising Mr. Brosco of Mr. Soares' right to seek relief under Rule 23(b). On May 26, 1978, Mr. Brosco "withdrew" as counsel for Mr. Soares by mailing him a hand written letter to that effect. He was replaced by Norman E. V. D'Andrea, Esq., on or about June 16, 1978. (None of this was communicated to the Court until July 14, 1978.) It follows that when Mr. Brosco withdrew from this action in late May, he had good ground for supposing that Mr. Soares had two more months within which to obtain new counsel and move for relief. As a result of Mr. Brosco's withdrawal, Mr. Soares was without counsel at the end of May and in early June when the thirty days provided for appeal to the Court

3. At oral argument on November 21, 1978, the administratrix argued, apparently for the first time, that Laurenio Soares should be barred from seeking relief because he assented to the terms of the proposed settlement, through his counsel, at an October 1977 meeting. There is little in the record to support this claim; but even if Laurenio Soares' momentary assent could be established, it would not operate to preclude judicial inquiry into the propriety of the proposed distribution today any more than it did when Judge Fogel considered the question last May. This is not a case like *Cohen v. Goldman,* 85 R.I. 434, 132 A.2d 414 (1957), on which the administratrix relies. There, the Court considered the question whether an attorney can compromise a client's case without the client's express authority. Here, the plaintiff-administratrix has petitioned the Court to approve a proposed distribution. And under the relevant Pennsylvania statute, 20 Pa.C.S.A. § 3323(a) and (b),[4] a court on petition of the decedent's personal representative is required to rule on the propriety of the settlement (or other termination) of an action brought on behalf of an estate. This statutory provision serves several substantive ends: it protects potential beneficiaries, assures that the taxing authority gets its due, and shelters the decedent's representative from subsequent liability by eliciting a judicial determination whether a proposed settlement (or other termination) sufficiently protects the decedent's estate. *In re Kreider's Estate,* 42 D&C 2d 46 (1966); *Condemnation of Marino's Property,* 47 Wash.Co. 162

(1967). And the statute is not limited to actions arising under Pennsylvania law or to estates administered under the laws of this Commonwealth. (Compare Rule 2206(b)(1) of the Pennsylvania Rules of Civil Procedure, as limited by the definition of "action for wrongful death" in Rule 2201). Thus, once the administratrix petitioned for approval of the proposed settlement, this federal court, sitting in Pennsylvania, would have been obliged to scrutinize the terms of the settlement, even if no objections had been proffered. As the Pennsylvania Supreme Court has observed, a "judge is not bound by what the parties may have agreed to; he must exercise his independent judgment on the whole case." *Norris's Estate,* 329 Pa. 483, 491, 198 A. 142, 146 (1938).

In short, this Court is both empowered and obligated to consider Laurenio Soares' challenge to the pattern of distribution agreed to by his daughter, as administratrix, and defendant. To the merits of that pattern of distribution, it is now appropriate to turn.

## II.

### A.

Pennsylvania and Rhode Island have both enacted statutory schemes to replace the "barbarous" common law rule under which a violation was nonactionable if it was serious enough to cause death. The two states' schemes differ markedly, however.

---

of Appeals—an appeal the administratrix contends was his sole recourse—expired.

4. Section 3323(a) and (b) provide in pertinent part:

(a) In general.—Whenever it shall be proposed to compromise or settle any claim, whether in suit or not, by or against an estate, or to compromise or settle any question or dispute concerning the validity or construction of any governing instrument, or the distribution of all or any part of any estate, or any other controversy affecting any estate, the court, on petition by the personal representative or by any party in interest setting forth all the facts and circumstances, and after such notice as the court shall direct, aided if necessary by the report of a master,

may enter a decree authorizing the compromise or settlement to be made.

(b) Pending court action.—

(1) Court order. Whenever it is desired to compromise or settle an action in which damages are sought to be recovered on behalf of an estate, any court or division thereof in which such action is pending and which has jurisdiction thereof may, upon oral motion by plaintiff's counsel of record in such action, or upon petition by the personal representative of such decedent, make an order approving such compromise or settlement. Such order may approve an agreement for the payment of counsel fees and other proper expenses incident to such action.

 Under Pennsylvania law, an administratrix can bring a survival action to recover damages to the decedent's estate, 20 Pa.C.S.A. § 3371, and a wrongful death action on behalf of specified beneficiaries who have survived the decedent and sustained damages as a result of his death, 12 Pa.C.S.A. § 1601 *et seq.* Recovery on the survival claim, which accrues to the estate, consists of compensation for pain and suffering and the difference between the decedent's gross expected lifetime earnings and the lifetime expenditures required for his own support and the support of his dependents (all reduced to present value). Recovery under the Wrongful Death Act, which runs in favor of the statutory beneficiaries, consists of funeral and medical expenses plus compensation for pecuniary loss suffered by reason of the decedent's death. See *Ferne v. Chadderton,* 363 Pa. 191, 69 A.2d 104 (1949); *Prince v. Adams,* 229 Pa. Super. 150, 324 A.2d 358 (1974); *Krakar v. Don Swart Trucking, Inc.,* 323 F.Supp. 157 (W.D.Pa.1971). And, in apportioning wrongful death recoveries, "where any one of a class has suffered pecuniary loss the Intestate Act will be followed and all members of the class will share equally despite differences in pecuniary loss." *Armstrong v. Berk,* 96 F.Supp. 182, 187 (E.D.Pa.1951). Accord, *Seymour v. Rossman,* 449 Pa. 515, 297 A.2d 804 (1972). Here, the record shows that *neither* of the decedent's parents relied on him for support, and that reimbursable expenses were approximately $1,500.[5] Hence, if Pennsylvania law applies, the settlement proceeds (after deduction of counsel fees, and roughly $1,500 in reimbursable expenses) should be paid to Paul Soares' estate as recovery on the survival claim.

 Rhode Island also provides two independent causes of action where wrongful conduct has resulted in death. The first is set forth in Sections 10–7–1 to 10–7–4 of the Rhode Island Laws. It provides for benefits to specified relatives "in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate," with damages ascertained by calculating the decedent's gross income over his life expectancy reduced by his estimated personal expenses, exclusive of support for any of his dependents (again all at present value). And Section 10–7–10 makes clear that "damages recoverable under §§ 10–7–1 to 10–7–4 inclusive shall . . . not be deemed or considered damages to the estate of the decedent, nor shall they be considered in any way an asset of the estate of the decedent, nor liable to any claims against the estate of the decedent." The second cause of action is set forth in Sections 10–7–5 through 10–7–7. It allows recovery of hospital and medical expenses incurred and compensation for pain and suffering; under Section 10–7–6 all monies recovered accrue to the decedent's estate. It is well established that both these causes of action have extraterritorial effect. *Woodward v. Stewart,* 104 R.I. 290, 243 A.2d 917 (1968); *Tiernan v. Westext Transport, Inc.,* 295 F.Supp. 1256 (D.R.I.1969). Thus, if Rhode Island law applies to this action, the settlement proceeds, (after deduction of counsel fees, and roughly $1,500 in reimbursable expenses), should be paid directly to the parents. And under the Rhode Island Intestate Law, the recovery should be distributed between them in equal shares. Rhode Island Laws § 33–1–1.[6]

5. The memorandum in support of the proposed settlement reports that Mrs. Soares "did not take money from the decedent." And the plaintiff's answer to interrogatory # 20 propounded by the defendant provides the $1,500 expense figure. It also bears mention that the accident was alleged to have occurred at 5:05 A.M. and the decedent was pronounced dead at 6:10 A.M. Accordingly, it is assumed for the purpose of this decision that damages for pain and suffering would have been insubstantial.

6. In her petition for approval of the proposed settlement, the administratrix argued that her father, Laurenio Soares, had forfeited his right to recovery by abandoning his wife and children. No Rhode Island case was cited adopting this equitable doctrine which has found favor in other jurisdictions. See, e. g., *Mortensen v. Sullivan,* 3 Ill.App.3d 332, 278 N.E.2d 6 (1972). In any event, the fragments of deposition testimony set forth in the petition do not demonstrate abandonment. While the monthly sup-

Thus it appears that the proposed distribution, which Laurenio Soares opposed and now seeks to overturn, does not conform to the Pennsylvania or to the Rhode Island pattern of distribution. The final question is: which pattern of distribution—Pennsylvania's or Rhode Island's—must a federal court sitting in Pennsylvania follow on the facts of this case?

## B.

 In selecting which state's law to apply when the substantive law of two or more states may have plausible claims to application, a federal court must follow the choice of law rules prevailing in the state courts of the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). For a federal court in Pennsylvania, the controlling choice of law principles are those enunciated by Justice Roberts, speaking for the Pennsylvania Supreme Court in the leading case of *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964). See also, *McSwain v. McSwain,* 420 Pa. 86, 215 A.2d 677 (1966); *Kuchinic v. McCrory,* 422 Pa. 620, 222 A.2d 897 (1966), and *Cipolla v. Shaposka,* 439 Pa. 563, 267 A.2d 854 (1970). *Griffith* and its *sequelae* reject the venerable but superannuated *lex loci delicti* in favor of the approach articulated in the Restatement Second of Conflicts: the governing law is "the local law of the state which has the most significant relationship with the occurrence and the parties." *Griffith, supra,* 203 A.2d at 802.

Thus, the problem posed here is to identify the state—Pennsylvania or Rhode Island—which "has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law." *McSwain, supra,* 215 A.2d at 682.

 Paul Soares had been working in Pottstown, Pennsylvania, for a few months at the time of the fatal accident. For a

time, he had also lived in Pottstown, but had moved to Newark, Delaware, some weeks before his death. Yet throughout he had, as previously noted, remained a Rhode Island domiciliary.[7] If the question before this Court were whether Rhode Island or Pennsylvania standards of due care should govern this litigation, the fact that Rhode Island was the state to which Paul Soares remained most closely linked would not be a persuasive reason not to apply Pennsylvania tort doctrines to a collision which took place on a Pennsylvania highway. However, the question which is before this Court—whether the bulk of the settlement proceeds should (a) pass through decedent's Rhode Island estate, or (b) be paid directly, and, if so, in what shares, to the surviving members of his family, all of them domiciled in Rhode Island—is one of no discernible consequence to this Commonwealth. Rhode Island, on the other hand, has a strong interest in the question—the very interest which Justice Roberts found dispositive in *Griffith:* there he applied Pennsylvania's Wrongful Death Act to a case in which a Pennsylvania plaintiff died in a plane crash in Denver, observing that "[o]ur Commonwealth, the domicile of decedent and his family, is vitally concerned with the administration of decedent's estate and the well-being of the surviving dependents to the extent of granting full recovery, including expected earnings." 203 A.2d at 807. Accordingly, in the instant case, "it is the local law [of Rhode Island] which has the most significant relationship with the occurrence and the parties." *Griffith, supra.*

 As indicated above, under Rhode Island law, the proper distribution of the settlement proceeds should have been as follows: *First:* to subtract counsel fees and reimbursable expenses (the latter apparently approximating $1,500). *Second:* to divide the remainder, in equal shares, between Laurenio Soares and Maria R. Soares. As against this, the distribution

port payments required by the Soares' divorce decree were not lavish, the deposition testimony indicates that Mr. Soares made the payments as required, before eventually "buying out" his remaining obligation for a small sum.

7. These facts come from plaintiff's answers to interrogatories propounded by the defendant.

approved by the Court's order of May 1, 1978, would have made no provision for the reimbursable expenses, and would (after subtraction of counsel fees) have divided the remainder, in the ratio of one to two, between Laurenio Soares and "Maria R. Soares, the mother of the decedent, or Maria R. Soares and Maria T. Soares, sister of the decedent and administratrix equally." The distribution approved by the Court's order of May 1, 1978 strays too far from the distribution proper under Rhode Island law and therefore should not have been approved. The orders approving it and dismissing this action are hereby vacated.[8]

### CONCLUSION

This decision vacating the May 1, 1978, and May 4, 1978, orders is not meant to reopen the fairness of the $60,000 settlement sum. Defendant's legitimate expectation that this issue has been settled should not be disturbed. Moreover, a settlement of $60,000 seems reasonable in light of the facts set forth in the administratrix's petition for approval. Within thirty days of receiving this Opinion and the accompanying Order, the administratrix should file a new petition for the distribution of the $60,000 sum, specifying with precision, and with such documentation as may be necessary, (1) the costs incurred for hospital, medical, and funeral expenses which are reimbursable under Rhode Island law, (2) counsel fees, and (3) the remaining sum which will accrue to decedent's parents in equal shares.

---

8. The granting of Laurenio Soares' motion to set aside the Rule 23(b) dismissal makes it unnecessary to consider his subsequent motion, filed September 6, 1978, for relief under F.R. Civ.P. 60(b).