427 A.2d 218

Marnee B. McCLINTON, administratrix of the Estate of Robert B. McClinton, Deceased, and Harry Toney, Administrator of the Estate of Dino Toney, Deceased,

v.

Barbara WHITE, Administratrix of the Estate of James C. McClinton, Jr., Deceased, and Lee C. Smith,

Appeal of Barbara WHITE, Administratrix of the Estate of James C. McClinton, Jr., Deceased.

Superior Court of Pennsylvania.

Argued Nov. 14, 1979.

Filed March 13, 1981.

Petition for Allowance of Appeal Granted July 22, 1981.

Samuel C. Holland, Beaver, for appellant.

Robert J. Campbell, Beaver Falls, for Marnee B. McClinton, appellee.

Frank C. Lewis, Beaver Falls, for Harry Toney, appellee.

Before CERCONE, President Judge, and MONTGOMERY and LIPEZ, JJ.

LIPEZ, Judge:

This is an appeal from a judgment in favor of appellees under the Survival Act.[1] Appellees' decedents Robert B. McClinton, age 16, and Dino Toney, age 18, were killed instantly in an auto accident. Following a bifurcated trial, the jury returned verdicts on the liability portion of the case against appellant Barbara White, administratrix of the Estate of James C. McClinton, Jr.[2] Thereafter verdicts were returned awarding each appellee damages in the amount of $170,000. Appellant's motions for new trial and judgment n.o.v. were denied and judgments were entered on the verdicts. This appeal, limited to the issue of damages, followed. Appellant cites a number of alleged errors, but we find it necessary to discuss only that one which, in our opinion, warrants reversal of the judgments.

The trial court instructed the jury that each estate was entitled to recover the present value of its decedent's loss of earning potential during his work life expectancy. To calculate the net loss of earning potential, the jury were instructed to deduct from each decedent's total earning potential "the probable cost of his necessary, economic living expenses and personal maintenance, those expenses required to sustain his life until the day of his retirement, whatever day

1. 20 Pa.C.S.A. §§ 3371–3373.

2. The jury returned verdicts in favor of Lee C. Smith. No motions as to him followed.

you determine that would be." (R. 360) Recognizing, no doubt, the ambiguity inherent to the use of the term "personal maintenance," the trial court further instructed the jury as follows:

> In considering the probable cost of maintenance, it should be pointed out to you that that amount is personal maintenance, it is that figure or that amount of money that you estimate or determine he would have spent on himself individually, personally, not what he would have spent on a wife, not what he would have spent on children, not on what he might have spent on parents, relatives or friends, not what he might have given away as gifts, but what he would have spent to provide himself with the necessities of life; that is, what he would have spent to sustain his life, to subsist and to live on. In other words, what he would have spent for those things which are essential to the individual's personal and physical subsistence. . . .

(R. 361) Appellant contends that the trial court erred in defining personal maintenance cost in terms of subsistence [3] level expenses. She argues that the deduction for maintenance costs is not limited to the amounts necessary to sustain life or to provide for physical subsistence, but, instead, includes all amounts which the decedent would have been reasonably likely to have spent upon himself during his lifetime. She also suggests that the proper measure of damages in these survival actions should have been based upon what each decedent would reasonably have accumulated and have remaining as a part of his estate at his death. While we do not subscribe to appellant's accumulated savings theory of damages for lost future earnings, we do find

---

**3.** "Subsistence suggests living with only the barest necessities/subsistence wages are the lowest needed to sustain life." *Webster's Third New International Dictionary of the English Language*, Unabridged, 1963, at 1325. The word, "subsist" is defined as "to have existence: be or remain alive." *id.*, 2279. "Subsistence . . . 3. means of support or livelihood; often, specif., the barest means in terms of food, clothing, and shelter needed to sustain life." *Webster's New World Dictionary of the American Language, College Edition*, 1974, at 1420.

that the trial court's description of the maintenance expense deduction was overly restrictive and provided the jury with an incorrect standard for determining damages.

A consideration of the nature of survival actions is helpful in ascertaining the proper characteristics of the maintenance expense deduction. At common law a right of action for personal injuries did not survive the death of the injured person. *See 2 Standard Pennsylvania Practice 26 et seq.* This rule has been modified over time by various statutes until today all causes of action survive the death of a party. *See* 20 P.S. §§ 3371–3373; and 42 Pa.C.S.A. § 8302. *See also, Moyer v. Phillips*, 462 Pa. 395, 341 A.2d 441 (1975).

A survival action must be distinguished from an action for wrongful death. In Pennsylvania, a survival action compensates a decedent's estate for various categories of damage sustained by the decedent alone, whereas a wrongful death action is designed solely to deal with the economic impact of the death upon certain statutorily designated persons. *Frazier v. Oil Chemical Company*, 407 Pa. 78, 179 A.2d 202 (1962). A survival action, unlike a wrongful death action, is not a new cause of action, but, "merely continues in his personal representative the right of action which accrued to the deceased at common law . . . ." *Pezzulli v. D'Ambrosia*, 344 Pa. 643, 26 A.2d 659, 661 (1942). In a survival action, the cause of action arises out of the injury, not out of the death. The estate is substituted for the decedent, and its recovery is based upon the rights of action which were possessed by the decedent at his death. The estate may recover for the loss of decedent's past and future earning power, for the decedent's pain and suffering prior to death, and for the cost of medical services, nursing, and hospital care provided to decedent. *Skoda v. West Penn Power Company*, 411 Pa. 323, 191 A.2d 822 (1963). The estate may not, however, recover funeral expenses since, obviously, the decedent could not have brought an action for these expenses at the time of his death. *See* 2 Feldman, *Pennsylvania Trial Guide* § 33.15 and cases cited therein.

278

■ In contrast, a cause of action for wrongful death [4] is possessed by certain specified relatives of the deceased who recover in their own behalf and not as beneficiaries of the estate. Damages, which are based on the pecuniary loss suffered by the statutory beneficiaries, are determined from the standpoint of the beneficiaries, not from that of the deceased. *Heffner v. Allstate Insurance Company*, 265 Pa. Super. 181, 401 A.2d 1160 (1979).[5] *Piacquadio v. Beaver Valley Service Co.*, 355 Pa. 183, 49 A.2d 406 (1946); *See also*, 2 Feldman *Pennsylvania Trial Guide* § 33.14.

While a wrongful death action is distinct from a survival action, certain of the damages of each may arise from a common fund: the lost earning power of the decedent. Thus, in order to avoid a duplication of damages, the Pennsylvania *Rules of Civil Procedure* provide that if independent survival and wrongful death actions are pursued they must be consolidated for trial, Pa.R.C.P. No. 213(e), and "Where the actions are tried together, the jury must bring in separate verdicts in the wrongful death action and the survival action." 2 Feldman, *Pennsylvania Trial Guide* § 33.6. *See also Frankel v. Burke's Excavating, Inc.*, 223 F.Supp. 945 (E.D.Pa.1963).

■ Despite the fact that the survival of personal actions was a creation of statute, the statutes do not speak to

**4.** 12 P.S. §§ 1601, 1602 and 1604, now substantially re-enact as 42 Pa.C.S.A. § 8301 (effective June 27, 1978).

**5.** Recoverable damages under the Wrongful Death Act have been held to include "the present worth of the deceased's probable earnings during the probable duration of the deceased's life, which could have gone for the benefit of the children, parent, husband or wife as the case may be; the value of such services as the deceased would have rendered to the named beneficiaries, and such gifts as the deceased would have been reasonably expected to have given the beneficiaries. The Wrongful Death Act itself also specifically provides for the recovery of medical expenses and funeral expenses. The cost of the tombstone and the cost of administration of the estate have also been held to be proper items of damage." 2 Feldman, *Pennsylvania Trial Guide* § 33.14; *see also Heffner v. Allstate Insurance Company, supra; Soares v. McClosky*, 466 F.Supp. 703, 708 (E.D.Pa.1979). But see *Kaczkowski v. Bolubasz, infra*, fn. 8 as to future earnings.

the issue of damages. The proper measure of damages in survival actions has thus been left to judicial determination. *Incollingo v. Ewing,* 444 Pa. 299, 304, 282 A.2d 206, 227 (1971). Perhaps because of this lack of a statutory standard, the measure of damages was for a time subjected to varying and somewhat inconsistent formulations. Thus, damages, for a time, differed, depending upon whether the action was filed prior to or subsequent to the death of the victim.[6] However, these inconsistencies were eliminated and the current rule was forcefully set forth by the Supreme Court in *Incollingo, supra,* 444 Pa. at 309, 282 A.2d at 229: "We hold that in all survival actions, damages are properly to be measured by decedent's pain and suffering and loss of gross earning power from the date of injury until death, and loss of earning power less personal maintenance expenses from the time of death through decedent's estimated working lifespan."[7] In addition, in order to avoid duplication of damages for loss of future earning power, survival action damages must be diminished by any amounts recoverable under the Wrongful Death Act. *See Ferne v. Chadderton,* 363 Pa. 191, 69 A.2d 104, 100 A.2d 854 (1949); *First National Bank of Meadville, Pa. v. Niagara Therapy Mfg. Co.,* 229 F.Supp. 460 (W.D.Pa.1964). And where the decedent is a minor, damages for loss of future earning power are limited to the earnings the decedent would have generated during his adult life. *Prince v. Adams,* 229 Pa.Super. 150, 154, 324 A.2d 358, 360 (1974).

*Incollingo,* however, was not concerned with the delineation of the expenses which are to be deducted as items of personal maintenance. Nor has any Pennsylvania appellate court attempted to define with specificity the items of expense that are to be included within the personal maintenance deduction. It is this question of the proper parame-

6. *Compare Murray v. Philadelphia Transportation Co.,* 359 Pa. 69, 58 A.2d 323 (1948) with *Radobersky v. Imperial Volunteer Fire Department,* 368 Pa. 235, 81 A.2d 865 (1951).

7. Gross earning power may involve types of compensation other than money (e.g. fringe benefits) *Vizzini v. Ford Motor Co.,* 72 F.R.D. 132 (E.D.Pa.1976).

ters of the personal maintenance deduction which is the point at issue in the present appeal.

Prior to *Murray v. Philadelphia Transportation Company*, 359 Pa. 69, 58 A.2d 323 (1948), survival action damages for lost future earnings had been measured by the decedent's estimated loss of gross earnings. *See Pezzulli v. D'Ambrosia*, 344 Pa. 643, 26 A.2d 659 (1942). The Court in *Murray*, recognizing that this rule overcompensated the estate by awarding it damages for expenses which, as a result of the death, would never be incurred by the estate, set forth the requirement that gross earnings be diminished by the decedent's probable cost of maintenance. This "net earnings" element was stated as follows:

> "In cases under the Survival Act of 1937, *supra*, the jury should be directed to ascertain what the earnings of the deceased person would have been during the period of his life expectancy, and to *deduct from them the probable cost of his maintenance as shown by the evidence* and to reduce the amount to its present worth."

359 Pa. at 74, 58 A.2d 323 (Emphasis added).[8] As precedent for the application of a net earnings measure of damages *Murray* cited and discussed a number of cases from other jurisdictions. Unfortunately, while each of these cases supported the general concept of applying a net earnings standard, they were in conflict in their characterizations of the maintenance cost deduction. The cited cases described the deduction in terms of such contradictory standards as "accumulations," "expenditures," and "necessary and economical living expenses." *Murray, supra*, 359 Pa., at 74–75, 58 A.2d 323. This has resulted in the *Murray* opinion being cited as authority for various inconsistent formulations of the personal maintenance deduction.

To define properly the limits of the personal maintenance deduction, it is necessary to analyse the rationale

8. But *see, Kaczkowski v. Bolubasz*, 491 Pa. 561, 421 A.2d 1027 (1980) (In order to fully compensate the victim in awarding damages for lost future earnings, future inflation is presumed to offset future interest rates, and the courts of Pennsylvania are instructed to abandon the practice of discounting lost future earnings).

underlying the net earnings rule. This rationale is based upon certain general propositions of the law of damages. "The primary object of an award of damages in a civil action, and the fundamental principle or theory on which it is based, is just compensation, indemnity, or reparation for the loss or injury sustained by the injured party, so that he may be made whole, and *restored as nearly possible to the position or condition he was in prior to the injury.*" 25 *C.J.S., Damages* § 3 at p. 626. (Emphasis added). The injured party should be fully compensated without being overcompensated or profiting from the injury. As stated by Justice Pomeroy in *Incollingo*:

> Clearly, damages are to be compensatory to the full extent of the injury sustained, but the award should be limited to compensation and compensation alone.... Moreover, except in those cases where public policy allows punitive damages, the loss sustained should be compensated with the least burden to the wrongdoer consistent with the idea of fair compensation to the injured.
>
> ... ᵛWe cannot be blind to the reality that neither the deceased person nor his estate is burdened with the personal maintenance costs of the decedent. It thus becomes clear that the proper measure of damages designed to be compensatory must include a deduction based upon decedent's cost of personal maintenance. On the other hand, the estate should not be deprived *of those earnings which are in excess of decedent's personal expenses,* which funds could be distributed through decedent's estate in much the same manner that the decedent himself might have apportioned them....

444 Pa. at 307–308, 282 A.2d 206. (Emphasis added). Based upon these concepts, it is difficult to justify limiting maintenance costs to only those expenses essential to the individual's physical existence. *Incollingo* speaks in terms of earnings in excess of the decedent's "personal expenses," and provides that the loss be compensated with the least burden to the wrongdoer consistent with fair compensation to the injured party. The *Murray* Court in its reasoning speaks in

term of "living expenses." Neither of these cases suggest that the maintenance expense deduction be based upon mere subsistence level existence. On the contrary, as will be shown, such a narrow definition of maintenance costs will overcompensate the estate.

Since no Pennsylvania Appellate decisions have defined the elements of the maintenance expense deduction, it is particularly helpful to consider the approach to this issue taken in other jurisdictions. Many jurisdictions do not allow the recovery of damages for earnings lost after the time of death. *See* Fleming, "The Lost Years: A Problem in the Compensation and Distribution of Damages," 50 *Calif.L.Rev.* 598 (1962). Other jurisdictions do permit recovery for this element either under survival, wrongful death, or combination survival/wrongful death statutes.

In those jurisdictions which permit some recovery for the lost future earnings power of the decedent, several different approaches are taken to the measurement of damages for this element. These include: (1) a "gross earnings" measure wherein the award is based upon the full amount of the decedent's lost prospective earnings with no adjustment other than a reduction to present value; (2) a "net accumulations" measure wherein the award is based upon the amount of lost future earnings which the decedent would have expected to save and accumulate for his estate at his death; and (3) a "net earnings" measure wherein the decedent's future earning power is reduced by his anticipated expenditures for his own maintenance. *See* Martin, "Measuring Damages in Survival Actions for Tortious Death," 47 *Wash.L.Rev.* 609, 620 (1972). In addition to Pennsylvania, jurisdictions which apply a net earnings measure include: Connecticut (*Floyd v. Fruit Industries, Inc.*, 144 Conn. 659, 136 A.2d 918 (1957)); New Hampshire (*Pitman v. Merriman*, 80 N.H. 295, 117 A. 18, 26 A.L.R. 589 (1922)); and Rhode Island (*Wiesel v. Cicerone*, 106 R.I. 595, 261 A.2d 889 (1970)).

The "net earnings" measure has also been applied in Hawaii in *Rohlfing v. Moses Akiona, Ltd.*, 45 Haw. 373, 369

P.2d 96, 105 (1961).[9] At the time of the *Rohlfing* decision the Hawaiian approach to survival actions damages provided the closest available parallel to that of Pennsylvania. Indeed the *Rohlfing* opinion relies heavily on *Murray* and other Pennsylvania survival cases in justifying its application of a "net earnings" measure of damages. *Rohlfing* describes this net earnings element as "the right to excess earnings" which it defines as:

> the right to the present value of the sum, if any, that with due regard to his own cost of living and the care of his loved ones, would have been at his disposal during his lifetime had he been permitted to live it normally.

*Rohlfing, supra,* 369 P.2d at 105. The Hawaii court then makes it clear that the maintenance expense deduction should encompass more than mere subsistence living expenses:

> Caution should be exercised, moreover, in instructing the jury as to deductions to be made in determining what we have called the excess earnings. The purpose of these deductions is to eliminate the expenditures for decedent's own cost of living [personal maintenance deduction] and the care of family and dependents [wrongful death deduction]. In computing such deductions the jury is to assume a standard of living commensurate with the supposed income of decedent. It is to assume that decedent would have enjoyed his life and spent accordingly. *The deductions are not to be computed at a bare minimum.* Otherwise the award ... would have in it the element of compensation for loss of enjoyment of life. That is not permissible.

**9.** Subsequent to *Rohlfing,* the issue of the proper measure of damages in death cases in Hawaii was clouded by *Greene v. Texeira,* 54 Haw. 231, 505 P.2d 1169 (1973), which held that no recovery would be allowed for postmortem lost future earning power, and by a statutory amendment to the Hawaiian survival statute *Haw.Stat.* §§ 663–3, 663–7, 663–8 (1973) which apparently attempts to reinstitute the law as it stood prior to *Greene.* In any event, we find the reasoning of *Rohlfing* to be appropriate and persuasive on the issue of the maintenance expense deduction.

*Rohlfing, supra,* 369 P.2d at 106 (brackets inserted). Nor is compensation for loss of enjoyment of life a permissible element of survival action damages in Pennsylvania. *Willinger v. Mercy Catholic Medical Center of Southeastern Pennsylvania, Fitzgerald Mercy Division,* 482 Pa. 441, 393 A.2d 1188 (1978).

Federal cases applying Pennsylvania law have also interpreted the deduction to encompass more than merely subsistence level expenses. "... [I]t cannot be some abstract minimal figure for bare survival but rather something based on decedent's own living standards." *Krakar v. Don Swart Trucking, Inc.,* 323 F.Supp. 157, 160 (W.D.Pa.1971). *See also: First National Bank of Meadville, Pennsylvania v. Niagara Therapy Mfg. Corp.,* 229 F.Supp. 460 (W.D.Pa.1964); *Migias v. United States,* 167 F.Supp. 482 (W.D.Pa.1958). Legal commentators have likewise come to the conclusion that limiting the personal maintenance deduction to subsistence level expenses is improper:

> The deduction under the *Murray* case is not limited to that sum which would be required for bare subsistence.

Bernstein, "Damages in Personal Injury and Death Cases in Pennsylvania (A Supplement)", 26 Pa.Bar Assn.Q. 26 (1954).[10] Another commentator has reached a similar conclusion.

**10.** Bernstein's discussion of the issue is instructive.

"In a case governed by the *Murray* decision, supra, we are confronted with the legal significance of the words 'cost of maintenance'. What do they mean and what do they not mean?

They do not denote *all* of the probable expenditures of the decedent during the years he would have lived had he not met with the accident. If they were to be so construed, we would have in Pennsylvania the 'future accumulations' principle, in which event the sum recoverable would be limited to the amount the deceased would probably have accumulated in his estate during the years the jury finds he would have lived. Our Supreme Court has stated, however, that this is not the law in our State.

It is felt that the Supreme Court meant the words 'cost of maintenance' to signify reasonable living expenses, although, as indicated previously, it did not say so directly.

What elements are to be considered as falling within the category of reasonable living expenses? It must include expenditures for food, clothing, shelter and medical outlays. Allowance also should

Of necessity, [decedent's] future maintenance will depend largely on his habits and tastes, his scale of living and whether his mode of living would change materially in the future.

*Montgomery and Marshall,* "A Survey of the Pennsylvania 'Wrongful Death' and 'Survival' Statutes," 25 Pa.Bar Assn.Q. 284, 287 (1954).

Clearly, the trial court's description of the maintenance expense deduction in terms of physical subsistence was error. The question remains as to what items of expense are properly to be included within the deduction.

■■■■■ As pointed out in *Incollingo, supra,* the primary goal in awarding damages to the estate is to compensate the estate fully for the injury sustained, without overcompensating it. *See also, Murray, supra,* 58 A.2d at 324. In many cases, the primary injury sustained by the estate is the loss of earnings that the decedent would have produced in the

be made for the expense of some recreation, as leisure time well spent bears a relationship to one's physical and mental health.

The deduction under the *Murray* case is not limited to that sum which would be required for bare subsistence. Reasonable living expense varies according to a person's station in life. For example, one earning $10,000 a year would be expected to spend more than one earning half that amount. The former would probably live in a more expensive home, eat and dress better and spend more for recreation. However, even when due consideration is given to a person's economic position, he may still spend a good deal more for these items than required by his status. The term 'reasonable living expenses' does not contemplate luxurious spending.

Bearing the foregoing factors in mind, one would define 'cost of maintenance' as that necessary and economical sum [Webster's Unabridged Dictionary defines the word *economical* as 'managed with frugality, avoiding waste, thrifty'] which a decedent would be expected to spend, based upon his station of life, for food, clothing, shelter, medical attention and some recreation."

*See also,* Bernstein, "Has the Measure of Damages Under the Survival Act in Pennsylvania Been Modified," 32 *Pa.Bar Assn.Q.* 47 (1960). The Bernstein articles are cited and quoted extensively in *McSparran v. Pennsylvania Railroad Company,* 258 F.Supp. 130 (E.D.Pa.1966); These articles are also cited by the courts in *Jones v. Friesel,* 207 F.Supp. 925 (W.D.Pa.1962); and *First National Bank of Meadville, Pa. v. Niagara Therapy Mfg. Corp.,* 229 F.Supp. 460 (W.D.Pa.1964).

future.[11]   For the purposes of assessing damages it is helpful to view the decedent from an economic perspective as a producer of earnings.[12]   This economic "producer" approach to the measurement of the lost future earnings power of a decedent is well-established in several of the other jurisdictions which apply a net earnings measure of damages.   In Rhode Island, for example, the producer concept has been consistently applied since *McCabe v. Narragansett Lighting Co.*, 26 R.I. 427, 59 A. 112 (1904).[13]   *McCabe* held that the deduction for the decedent's personal expenses was to be based upon "what the deceased would have to lay out, as a producer, to render the service or to acquire the money that he might be expected to produce, computing such expenses according to his station in life, his means and personal habits."   26 R.I. 427, 435, 59 A. 112, 115.   The functionality of this approach is demonstrated by its continued application in the years that have followed.   "Since the days of *McCabe,* this court has treated a decedent's 'personal expenses' as including the expenses he would have to incur to generate

**11.**   "Permanent loss of earning power is usually the chief economic harm caused by a permanent injury."   *Hudson v. Lazarus,* 217 F.2d 344, 348 (D.C.Cir.1954).   *See also Floyd v. Fruit Industries, Inc.,* 144 Conn. 659, 136 A.2d 918, 924 (1957).

**12.**   Pennsylvania courts have viewed the decedent as an economic unit for purposes of determining damages.   As stated in *Gannon v. Lawler,* 34 Pa.D & C 571 (1939):   "Decedent's life is of value to his creditors, at least, but the only measure of the monetary value of a human life is what life would have produced in money if it had not been terminated in death.   In our opinion, damages for the economic value of a life and for the loss of earning power are the same."   *See also Sidekum v. Animal Rescue League,* 353 Pa. 408, 45 A.2d 59 (1946), where the court states that it is the *economic value* of a decedent's life which is measured by the present worth of likely earnings during life expectancy.

**13.**   While *McCabe* involved an action under the Rhode Island wrongful death statute, that statute is an estate-type statute, which awards damages for the death in terms of economic loss to the decedent rather than to his survivors.   Thus the theory of damages awarded thereunder is similar to that applied in Pennsylvania survival actions.   *See Turcotte v. Ford Motor Company,* 494 F.2d 173 (1st Cir. 1974); General Laws of R.I. § 10–7–1.1;   *see also Soares v. McClosky,* 466 F.Supp. 703 (E.D.Pa.1979) which compares the Pennsylvania and Rhode Island death statutes.

his estimated future earnings or income." *Romano v. Duke,* 111 R.I. 459, 304 A.2d 47, 49 (1973). "The deduction is made for what the decedent would have to spend as a producer, computed according to his status in life, his means and personal habits to acquire such income as earnings." *Wiesel v. Cicerone,* 106 R.I. 595, 261 A.2d 889, 892 (1970).

The cost of production approach to the personal maintenance deduction has also been long accepted in New Hampshire.

> While [decedent's] earning capacity for himself would be the gross amount he could obtain as the fruits of his efforts, or service in any capacity, the amount which he could earn for his estate or the benefit of others would be what remained after deducting the necessary expense of his own living. His earning capacity, which tends to augment his estate or to permit him to aid those naturally dependent upon his bounty, is necessarily his *net earning capacity; his capacity to acquire money, less the necessary expense of acquisition.*

*Pitman v. Merriman,* 80 N.H. 295, 117 A. 18, 19, 26 A.L.R. 589 (1922) (Emphasis added.) *See also Morrell v. Gobeil,* 84 N.H. 150, 147 A. 413, 414 (1929) where the deduction is described as encompassing "the expense of maintaining the decedent—*the cost of production.*" (Emphasis added.) [14]

Connecticut law also provides for the deduction of "personal living expenses" from damages otherwise recoverable for the loss of earning capacity of a decedent. *Floyd v. Fruit Industries, Inc.,* 144 Conn. 659, 136 A.2d 918 (1957). The *Floyd* court defined "personal living expenses" for the purposes of the deduction as

> those personal expenses, which under the *standard of living followed by a given decedent,* it would have been *reasonably necessary* for him *to incur to keep himself in such a condition of health and well-being that he could*

14. *Pitman* and *Morrell* were among the cases cited with approval by the Pennsylvania Supreme Court in *Murray, supra,* 359 Pa. at 74–75, 58 A.2d 323.

*maintain* his capacity to enjoy life's activities, including *the capacity to earn money.*

144 Conn., at 675, 136 A.2d at 926–927 (Emphasis added.) [15]

■ We agree with the general approach in those cases wherein the decedent is viewed, for purposes of determining lost future earning power, as an economic unit capable of producing earnings, but subject to the costs of production. This approach is consistent with the goal avowed in *Incollingo, supra,* of full compensation without overcompensation of the estate. The death has cut off the earnings production power of the estate, and it has also saved the estate those future costs associated with the production of earnings. In order to avoid overcompensating the estate, all those expenses which relate to the production of earnings and which cease at death must be deducted. This includes expenses personal to the decedent which would have been reasonably necessary for him to incur in order to keep himself in such a condition of health and well-being that he would maintain his earning power, *Floyd v. Fruit Industries, Inc., supra,* as well as any other reasonably necessary "production cost" items of expense, which have ceased at his death.[16] *See: Hochrein v. United States,* 238 F.Supp. 317 (E.D.Pa.,1965); *Miller v. Tuten,* 137 Ga.App. 188, 223 S.E.2d 237, 239 (1976); Speiser, *Recovery for Wrongful Death* 2d § 3.6. These expenses should be computed according to decedent's station in life, his means and personal habits. *Wiesel v. Cicerone, supra; Floyd v. Fruit Industries, Inc., supra; Kraker v. Don Swart Trucking, Inc., supra.*

■ Clearly, maintenance costs as herein defined will vary with different individuals and occupations even though the subsistence level living expenses of the individual might be the same. Since maintenance expense involves only those

**15.** Connecticut and New Hampshire are among the few states where recovery is under one statute which combines the functions of wrongful death and survival statutes. *See* 33 *Texas Law Review* 518 (1955).

**16.** *See* note 10 *supra* for typical items of expense which may be deductible.

costs reasonably necessary for the production of earnings, the term does not include all the personal expenditures that would have been made by the decedent had he lived. And since the savings which the decedent would have accumulated and left to his estate at his death do not account for these recoverable non-maintenance expenditures, accumulations is not a proper measure of damages.[17] *Pezzulli v. D'Ambrosia,* 344 Pa. 643, 649, 26 A.2d 659, 662 (1942); *Haddigan v. Harkins,* 441 F.2d 844 (3rd Cir., 1970); *McSparran v. Pennsylvania Railroad Company,* 258 F.Supp. 130 (W.D.Pa.1966). *See also,* Bernstein, "Has the Measure of Damages Under the Survival Act in Pennsylvania been Modified?" 32 *Pa.Bar Assn.Q.* 47 (1960).

The trial court's instruction was in error in that it applied a subsistence level expense standard to the maintenance expense deduction. We therefore reverse and remand for a new trial limited to the issue of damages.

---

17. "This 'net accumulations' measure of damages differs from the 'net earnings' measure in that *all* of the decedent's expenditures are taken into account, not just those for his own maintenance." Martin, "Measuring Damages in Survival Actions for Tortious Death," 47 Wash.L.Rev. 609, 620 (1972).