410 A.2d 796

ESTATE of John F. R. CLARK, Deceased.

ESTATE of Madeline P. CLARK, Deceased.

Appeal of Charles CATANESE.

Supreme Court of Pennsylvania.

Argued Sept. 24, 1979.

Decided Feb. 1, 1980.

2

Keith H. West, Jerry F. Palmer, Thorp, Reed & Armstrong, Pittsburgh, for appellant.

Thomas Levendos, Pittsburgh, for Yvonne O'Brien.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Charles Catanese, attaching judgment creditor of Patrick Clark, Esq., appeals from final decrees of the

Orphans' Court Division of the Court of Common Pleas of Allegheny County. The orphans' court rejected appellant's challenge to debtor Clark's "release and renunciation" of the full, unknown amount of his distributable share of the estates of his deceased parents, John Clark and Madeline Clark. Clark had "released and renounced" his interest in exchange for settlement of his obligation to repay an equally unknown amount of estate funds he misappropriated while executor of the estates. Although the orphans' court denied appellant relief on the ground that Clark "is generally in default in the two estates in a greater amount than his share in both estates," and thus nothing remains for attachment, we agree with appellant that the record contains insufficient evidence to support the conclusion of the orphans' court. Accordingly, we vacate the decrees and remand with instructions.

I

John Clark died on June 25, 1973. His wife, Madeline Clark, died two weeks later. Both left wills giving each of their children an equal share of their respective estates. They also named their oldest child Patrick Clark, an accountant and attorney, as executor. Clark received letters testamentary in August of 1973. By November of 1975, the orphans' court removed him as executor for mismanagement of the estates and misappropriation of estate assets. The court substituted another child, Yvonne Clark O'Brien, as executrix.[1]

In the meantime, in August of 1973, appellant had obtained a default judgment against Clark for Clark's alleged malpractice while providing appellant representation. After a hearing on damages, the Civil Division of the Court of Common Pleas of Allegheny County returned a verdict of $119,066 in appellant's favor. In August of 1974, appellant reduced his verdict to judgment.

1. After Patrick Clark's removal, criminal charges were instituted against him for misappropriation of estate funds. Clark pled guilty in February of 1978.

4

For some nineteen months appellant unsuccessfully sought to satisfy the judgment. Appellant then attempted to execute upon debtor Clark's interest in his deceased parents' estates. On March 17, 1976, on appellant's praecipe, the Prothonotary of Allegheny County issued writs of execution against Yvonne Clark O'Brien, the estates' executrix, as garnishee. Two days later, the Sheriff served the executrix with the writs. At that time, the estates were "in total havoc and disarray." [2] Although interrogatories were also served, the parties agreed to postpone filing of answers.

After appellant had attached Clark's distributable share, Clark, the executrix, and other beneficiaries entered into negotiations to settle Clark's obligation to the estates. As a result of the negotiations, in February of 1978, Clark executed a "release and renunciation" of whatever distributable share of the estates he might have received. Thereafter, appellant filed a claim with the estates based on his attachment executions two years earlier. In May of 1978, at audit, appellant filed a "petition to enjoin" Clark's release and renunciation insofar as it affected his existing attachment executions. The orphans' court denied relief and these appeals followed.[3]

2. Brief for Estates at 4.

3. The orphans' court expressed the view that appellant was not a party to the orphans' court proceedings and therefore should have sought leave to intervene under Pa.R.Civ.Proc. 2328 et seq. before petitioning for relief. It is clear, however, that the orphans' court misperceived appellant's status. It is well settled that attachment execution "substitutes the legatee's creditor instead of the legatee himself." *Strong's Executors v. Bass*, 35 Pa. 333, 334 (1860). Indeed, it has been held that an attaching creditor of a distributee is a "person . . . claiming to be interested in the estate" under § 46(c) of the Fiduciaries Code of 1917 and thus is entitled to actual notice of the filing of an account. *Fleming's Estate*, 18 D. & C. 731, 731 (O.C.Phila.1933) (attaching judgment creditor "stands in the shoes of the distributee"). See also *Centrella Estate*, 20 D. & C.2d 486, 489 (O.C.Phila.1960) (Klein, P. J.) (attaching creditor may compel accounting). Compare *Carter's Appeal*, 10 Pa. 144 (1849) (creditor of distributee recognized in orphans' court only if claim reduced to judgment and attachment issue). See generally 9 Goodrich Amram 2d § 3111(b): 5; Fiduciary Review, April, 1955.

## II

Appellant maintains, as he maintained in the orphans' court, that his existing attachment executions could not be divested by debtor Clark's later release and renunciation. All that appellant seeks, however, is to have his attachment executions operate on Clark's share to the extent the share exceeds the amount Clark owes the estates. (Indeed, appellant concedes the estates' claims on Clark's share take priority over his. See e. g., *Strong's Executors v. Bass*, supra note 3.) Appellant contends that the facts necessary to calculate whether an attachable share exists have not been determined.

■ "It is hornbook law that findings by a court must be based on proved facts or inferences therefrom . . . and possess some evidentiary support." *Hosfeld Estate*, 412 Pa. 156, 162, 194 A.2d 158, 161 (1963). The finding of the orphans' court here, that Clark "generally" is in default in an amount greater than the amount which he would receive, lacks the necessary evidentiary support. This determination can be made only if two amounts first have been established: (1) the amount of the bequest to Patrick Clark, and (2) the amount of estate assets Clark improperly withdrew. Neither amount, however, has been determined, for there has been no accurate inventory of either estate filed, and the present executrix has not established the amount by which Patrick Clark should be surcharged. As an attaching judgment creditor, appellant must be permitted to require proper determination of both amounts. Cf. e. g., *Centrella Estate*, 20 D. & C.2d 486, 489 (O.C.Phila.1960) (Klein, P. J.) (attaching creditor of distributee "clearly has the right to compel an accounting").

The estates' arguments in support of a contrary result are unpersuasive. The estates accept the validity of Pennsylvania's long-standing rule which precludes a beneficiary's renunciation of an interest "where that interest has been attached. . . ." [4] See e. g., *Buckius Estate*, 4 Dist.Rep.

4. Brief for Estates at 14.

775 (O.C.Phila.1895); 2 Hunter's Orphans' Court Commonplace, Executions by Creditors § 6, p. 303 (1959); Fiduciary Review, April, 1955, at p. 3.[5] The estates do claim, however, that Patrick Clark released and renounced his interest in the estates pursuant to a "family settlement agreement" which, it is claimed, should be given priority even over the claim of an attaching judgment creditor such as appellant. While it is indisputable that family settlements are favored, see e. g., *McCrea Estate*, 475 Pa. 383, 380 A.2d 773 (1977); *Stancik Estate*, 451 Pa. 20, 301 A.2d 612 (1973), the estates cite, and we find, no case which so favors a settlement agreement as to displace an existing attachment execution. Indeed, *Fry v. Stetson*, 370 Pa. 132, 87 A.2d 305 (1952), the case the estates cite, merely confirms the general rule that absent fraud family settlement agreements entered into before attachment execution have priority. *Fry*, however, bears upon only the priority of family settlement agreements entered into before attachment and not, as here, after attachment. It cannot support the rule the estates urge this Court to adopt.

■ The estates further contend that appellant's claim is barred by "laches." The estates complain of appellant's inaction in failing to interpose objection to Patrick Clark's "release and renunciation." The estates ignore the fact that, before Clark attempted to release his shares, appellant had valid, existing attachment executions of record. Indeed, correspondence between the parties demonstrates that appellant refrained from any further action to permit the estates full opportunity to ascertain its losses. And the claimed inaction has in no respect prejudiced the estates. See 2 Standard Pennsylvania Practice § 26 (1956). On this record this contention is wholly without merit.[6]

5. The estates do not argue the doctrine of "relation back" is applicable here. Compare *Buckius Estate*, supra text, with *Schoonover v. Osborne*, 193 Iowa 474, 187 N.W. 20 (1922); see generally III American Law of Property § 14.15, pp. 629–30 (Casner ed. 1952).

6. At oral argument before this Court appellees challenge (apparently for the first time in these proceedings) the validity of appellant's attachment in light of Allegheny County Rule of Court 229*(e) and

Accordingly, we vacate the decrees of the orphans' court and remand for a determination of (1) the amount of the bequest to debtor Clark, and (2) the amount of estate assets Clark improperly withdrew. If the amount Clark improperly withdrew equals or exceeds the amount of his bequest, then there are no estate assets attributable to Clark upon which appellant's attachment executions can operate. If, on the other hand, the amount Clark improperly withdrew is less than his bequest, the excess funds in the hands of the garnishee are properly subject to the attachment executions.

Decrees vacated and case remanded for proceedings consistent with this opinion. Each party pays own costs.

MANDERINO, J., did not participate in the decision of this case.

LARSEN, J., filed a concurring opinion in which FLAHERTY, J., joins.

LARSEN, Justice, concurring.

I agree with the result reached by the majority. I cannot, however, subscribe to the majority's analysis which ignores applicable legislative enactments that, it seems to me, are determinative of the issues herein.

the corresponding effect upon Patrick Clark's ability to disclaim his interest in the estates. Local Rule 229*(e) provides:

"Any matter pending in the Civil or Family Division in which there has been no activity of record for a period of two (2) years or more shall be terminated automatically by operation of law by reason of inactivity. The first period of two years is to begin on January first, 1973. The matter may be reactivated by the Court upon petition for good cause shown after such notice as the Court shall direct. The filing of a paper after automatic termination under this rule shall not reactivate the terminated matter."

Here, in May of 1978, two years after service of the writs and interrogatories, Yvonne Clark O'Brien as garnishee filed preliminary objections to the interrogatories in the civil division, raising "inactivity" under local rule 229*(e). Although the civil division sustained the preliminary objections, it declined to grant the garnishee's request to dissolve the writs of attachment execution. Indeed, four days later, the civil division granted appellant's petition to reactivate the attachment. Thus, even assuming that the question of the effect of Rule 229*(e) is now properly here, it would appear that the civil division, on its interpretation of local rule, has concluded that no dissolution should occur on these facts.

Patrick Clark, at a hearing before the Honorable Thomas A. Harper, Criminal Division, Court of Common Pleas of Allegheny County on February 2, 1978, pleaded guilty to one count of theft by unlawful taking of the Clark estates' assets. At this hearing, Clark admitted that he improperly disposed of assets of the estates, the amount of which was unknown. Clark was placed on probation for a period of five years and fined. As part of the terms of the sentence, per the plea negotiations, it was required that Patrick Clark execute releases and renunciations to the executrix of any present or future interests he had in the Clark estates. He was further required to cooperate with the executrix, Yvonne Clark O'Brien, in auditing and settling the accounts of the Clark estates and to pay to the estate $15,000.00 in return for the withdrawal of a civil suit filed against Patrick Clark regarding certain assets. It was also required that he place $5,000.00 in escrow to cover estate tax liability that might be imposed on the estate. Pursuant to the plea bargain, which took into account the family settlement negotiations in this matter, Patrick executed, on February 10, 1978, a document captioned "Release and Renunciation of All Claims", and a document captioned "Release", which documents purported to relinquish any and all interests he might have in the assets of each estate.[1] These documents

---

1. These documents provide:
   *RELEASE AND RENUNCIATION OF ALL CLAIMS*
   KNOW ALL MEN BY THESE PRESENTS, that, whereas, John F. R. Clark . . . died on June 25, 1973, and WHEREAS, John F. R. Clark left surviving him his wife, Madeline P. Clark and ten children, and
   WHEREAS, the undersigned, PATRICK D. CLARK, is one of the children of the decedent, and desires to release all his right, title land interest in and to all the property, real and personal, owned by the said John F. R. Clark, Deceased, at the time of his death.
   NOW THEREFORE, I, PATRICK D. CLARK, as an heir of the Estate of John F. R. Clark, and as a legatee under his Will, or as owner of any other interest that I may be entitled to by inheritance or otherwise in said Estate for and in consideration of One ($1.00) Dollar and other valuable consideration, the receipt of which is hereby acknowledged, do hereby release all right, title and interest of every kind and nature in and to the Estate and property of said John F. R. Clark, Deceased, and all claims and demands against the said decedent.

were made part of the record in the Orphans' Court proceedings.

On May 19, 1978, a hearing was held on the first and final accounts filed by the executrix in the Clark estates. At the hearing, the attorney for the estate stated for the record "had the [family] settlement not been arrived at, I would have taken exception to the—both the amounts in the account and the distribution therein. But for the purposes of the settlement, I will not. And I have not filed exceptions thereto."

On March 19, 1976, appellant served a writ of attachment on Yvonne Clark O'Brien (executrix) as garnishee, attempting to attach Patrick Clark's interest in the Clark estates. Appellant filed in Orphans' Court, on May 2, 1978, a "Petition to Enjoin Beneficiary [Patrick Clark] from Renouncing Interest in Estates of John F. R. and Madeline P. Clark." This petition asserted that Clark's February 10, 1978 releases and renunciations were ineffective to cut off appellant's rights as an attaching judgment creditor. The petition was presented at the May 19, 1978 hearing on the first and final accounting and audit, and was denied, and the accounting was approved.

IN WITNESS WHEREOF, I have set my hand and seal this 13th day of February, 1978, with the intent to be legally bound hereby.

*RELEASE*

KNOW ALL MEN BY THESE PRESENTS that I, PATRICK D. CLARK . . . for and in consideration of One ($1.00) Dollar to me paid by Yvonne Eileen Clark O'Brien, Executrix of the Estate of John F. R. Clark, the receipt whereof is hereby acknowledged, do hereby remise, release and forever quitclaim unto Yvonne Eileen Clark O'Brien, Executrix of the Estate of John F. R. Clark, and her respective heirs, executors and administrators, all and all manner of actions, cause of action, debts, dues, claims and grants, both at law and in equity, against Yvonne Eileen Clark O'Brien, Executrix, in her individual capacity, and also in her capacity of Executrix of the Last Will and Testament of John F. R. Clark, Deceased, and against the Estate of John F. R. Clark, Deceased, whether as legatee under the Last Will and Testament of John F. R. Clark, or in any other capacity, I have had, now have, or ought to have for or by reason or means of any matter or thing from the beginning of the world to the day of the date of these presents.

Identical documents were executed as to the estate of Madeline P. Clark.

Essentially, the question in this appeal is "what effect does the purported release and/or disclaimer [2] of the beneficiary's (Patrick Clark's) interest under the wills prior to the distribution of the estate have upon the rights of a judgment creditor of said beneficiary to attach that interest?" The majority opinion notes "Pennsylvania's *long-standing* rule which precludes a beneficiary's renunciation of an interest 'where that interest has been attached. . . . ' *See e. g., Buckius Estate*, 4 Dist.Rep. 775 (O.C. Phila. 1895); 2 Hunter's Orphans' Court Commonplace, Executions by Creditors § 6, p. 303; Fiduciary Review, April, 1955, at p. 3." I am not certain that the meager support cited establishes "Pennsylvania's long-standing rule" but, even assuming the validity of that rule, it has been displaced by statute.

The legislature has recently enacted a statute which is controlling in this situation, the Act of July 9, 1976, P.L. 562, No. 136, Ch. 62 (Disclaimers) 20 Pa.C.S. §§ 6201–6207 (Supp. 1979–80). Section 6201 provides, in relevant part:

A person to whom an interest in property would have devolved by whatever means, including a beneficiary under a will . . . may disclaim it in whole or in part by a written disclaimer which shall (1) describe the interest disclaimed, (2) declare the disclaimer and extent thereof, and (3) be signed by the disclaimant.

The right to disclaim shall exist notwithstanding any limitation on the interest in the nature of a spendthrift provision or similar restriction.

Section 6205 describes the effect of such a disclaimer; it provides:

(a) In general.—A disclaimer relates back *for all purposes* to the date of the death of the decedent . . . . The disclaimer shall be binding upon the disclaimant *and*

2. The lower court and the parties generally use the terminology "renounce" and "renunciation". I use these words synonymously with "disclaim" and "disclaimer" as each term connotes the refusal to accept an inter vivos or testamentary gift so that title never passes to the renouncer/disclaimer. *See* Black's Law Dictionary (West 5th Ed.); Bregy, Intestacy, Wills and Estates Acts of 1947, Sec. 3, ¶ 5 (Bisel 1949). I will use the disclaimer terminology.

*all persons claiming through or under him.* (emphasis added).

The broad language of this section leads to the inevitable conclusion that a disclaimer will prevent a creditor from reaching a beneficiary's interest under a testamentary gift which has been disclaimed in the manner provided in the statute. The disclaimer relates back *for all purposes* to the decedent's death and is binding on *all persons* claiming through the disclaimant. A creditor claims through the debtor/disclaimant and, since the disclaimer relates back to decedent's death, the effect in law is that no interest in the estate has ever passed to the disclaimant which could be attached by a creditor.

This was the effect desired by the drafters of the Disclaimer Act. Chapter 62 was patterned after the Uniform Disclaimer of Property Interests Act, the Uniform Disclaimer of Transfers by Will, Intestacy or Appointment Act and the Uniform Disclaimer of Transfers under Nontestamentary Instruments Act. *See* § 6201, Official Advisory Committee Comment. The Commissioner's Comment to § 3 of the Uniform Disclaimer of Transfers by Will, Intestacy or Appointment Act makes it clear that the Act applies to creditors of a disclaimer: "[a]s regards creditors . . . the provision for 'relation back' has the legal effect of preventing a succession from becoming operative in favor of the disclaimant. The relation back is 'for all purposes' which would include, among others for the purpose of rights of creditors . . . ."

Thus, a beneficiary is *permitted* by Chapter 62 to disclaim an interest even though such disclaimer operates to "cutoff" a creditor's attached interest. However, Chapter 62 also provides that a prior acceptance of the interest by the beneficiary will operate as a bar to disclaimer. Section 6206 states:

(a) Acceptance.—A disclaimer may be made at any time before acceptance. An acceptance may be express or may be inferred from actions of the person entitled to receive an interest in property such as the following:

(1) The taking of possession or accepting delivery of the property or interest.

.     .     .     .     .

(3) An assignment conveyance, encumbrance, pledge or other transfer of the interest or a contract to do so.

.     .     .     .     .

To constitute a bar to a disclaimer, a prior acceptance must be affirmatively proved. . . .

In the instant case, while the lower court did not specifically deal with this section of the Code, it is evident that Patrick Clark, the beneficiary, had accepted his interest in the Clark estates. There is no dispute that he appropriated the assets of the Clark estates to his own beneficial use and enjoyment—this was admitted by Patrick Clark in criminal court. I would hold that, even though the beneficiary has no *legal* right to presently possess or enjoy the assets in an estate, appropriation by the beneficiary of those assets to his own beneficial use and enjoyment constitutes acceptance under § 6206. Accordingly, Patrick Clark's acceptance of his interest in the Clark estates would operate as a bar to an effective disclaimer of that interest.

Having accepted the interest, Clark's "release and renunciation" was, in reality, *a form of conveyance* —a transfer of the interest *he had already accepted* to others who also had interests in the Clark estates. " 'Release' is a type of conveyance . . . . As opposed to cases of disclaimer or renunciation, it is assumed in cases of release that the releasor owned something to begin with and that he has released it to somebody else who owned an interest in the same property." Bregy, Intestacy, Wills and Estates Acts of 1947, section 3, ¶ 5 (Bisel 1949); *see* Official Advisory Committee Comment to 20 Pa.C.S. § 6201 ("release after acceptance . . . is really a form of conveyance").

A release of an interest in an estate is sanctioned by 20 Pa.C.S. § 6103 (1975). However, this section does not speak to the effect of a release on the rights of a creditor of the releasor. Appellant contends that this conveyance in the form of release was fraudulent as to him.

Appellant admits that his right to receive Patrick Clark's share of the Clark estates is subject to the executrix' right to set off any debt which Clark owes to the estates. Brief for Appellant at 15. However, appellant claims the estates are limited in their set-off to the amount in which Clark was in default. This, according to appellant, requires a determination of two amounts—the amount of assets in the Clark estates from which Patrick Clark's share could be computed and the amount of assets which were converted by him. Appellant's proposition is that the consideration given by the estate in exchange for the beneficiary's release must be equal to the value of the interest released, else the difference will be subject to attack as a fraudulent conveyance upon creditors of the beneficiary.

The restrictions on a debtor's ability to convey assets to a creditor to the detriment of another creditor are to be found in the Uniform Fraudulent Conveyance Act, 39 P.S. §§ 351–363 (1954) (hereinafter UFCA). Section 351 of the UFCA defines a "conveyance" as including "every payment of money, assignment, *release*, transfer, lease, mortgage or pledge of *tangible or intangible property* . . . ." A release of an interest in an estate as heretofore discussed is, therefore, within the ambit of the UFCA and, if fraudulent as defined therein, may be reached by creditors of the conveyor.

Under the UFCA, there are two categories of conveyances which are fraudulent. The first category, section 357, deals with conveyances made with intent to defraud and provides "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent to both present and future creditors". The lower court found no intent to defraud and so held section 357 inapplicable. It is clear that Patrick Clark's release was the result of family negotiations toward settlement and guilty plea negotiations. The release was made a condition of the criminal court's acceptance of the prosecution's recommended sentence, and was the *quid pro quo* for

the estates' withdrawal of civil litigation against Clark. Thus, there was adequate evidence supporting the finding that the release was not made with actual intent to defraud appellant.

The second category, section 354, deals with conveyances made by an insolvent; it provides:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

The lower court held this section inapplicable because Patrick Clark "had other assets which he was required to deposit in escrow for the estate, so he did not thereby render himself insolvent." Thus, that court found no fraudulent conveyance under § 354 because the debtor was not rendered insolvent by the release. However, the mere fact that he had such "other assets . . . in escrow" does not establish his solvency as these assets were pledged to the estate as part of the entire transaction which precipitated the release.

Moreover, the court ignored the statutory definition for insolvency.[3] Under that definition, Patrick Clark could still be found insolvent even though he had assets in escrow. I would, therefore, vacate the order of the Orphans' Court and remand for an application of the statutory definition of insolvency. Additionally, if the court would determine that Patrick Clark was rendered insolvent by the release, a further determination would have to be made, namely, whether the release was given for fair consideration within the meaning of § 353 of the UFCA: If the court would find that the monetary value of the interest released by Patrick Clark exceeded the monetary value of the set-off due the Clark estates by virtue of Patrick's theft and mismanagement of estate assets, the excess consideration would be

3. 39 P.S. § 352 provides:

(1) A person is insolvent when the present, fair, salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured. . . .

subject to attack and, to that extent, could be set aside under applicable provisions of the UFCA.

For the foregoing reasons, I would vacate the Orphans' Court decree, and remand for proceedings consistent with this opinion. Each party to pay own costs.

FLAHERTY, J., joins in this concurring opinion.