## Krause v. B & O Railroad

*George B. Kaufman,* for plaintiff.
*John J. Barbera,* for defendant.
*David J. Flower,* for objectants.

COFFROTH, *P.J.* December 7, 1983 — The matter now before the court for disposition is a contested amended petition for compromise and settlement of wrongful death and survival actions filed to no. 489 Civil 1983 above captioned. Petitioner is the widow and administratrix of decedent acting in behalf of herself and decedent's two minor dependent children in her custody (born July 24, 1967 and April 23, 1974). Defendant as alleged tortfeasor has agreed to the terms of the proposed settlement and therefore is in effect a co-petitioner. Objectants are decedent's five adult non-dependent children to a prior marriage who are emancipated and self-supporting and have no objection to any settlement of the wrongful death claim (in which they concede they have no interest), but object to inclusion in the settlement of the survival claim (in which they have an interest as heirs-at-law of their intestate father).

## FACTS

On Saturday, June 5, 1982, shortly before 8:00 p.m., decedent and four other persons were passengers in an automobile operated by one Housel in a northerly direction on Broadway Street in Meyersdale. According to the statement of the trainman (flagman), the only eyewitness, he was on the south side of the train, apparently in the cab of the lead engine beside the fireman who was at the controls. The flagman stated that as the automobile approached the multiple main-line tracks of defendant railroad, a train was moving westward on the northernmost track, approaching the Broadway grade crossing, at about 35 miles per hour with headlights on, automatic bell ringing and whistle blowing. When the lead engine was about two engine-lengths east of Broadway, the moving automobile first came into view. The car "pulled up onto the southernmost tracks and appeared to come to a stop with its front bumper at about the north rail of the south track . . . safely clear of our train of the north track. Right afterward, when we were perhaps less than one-engine length east of the crossing, the auto appeared to raise up in the front end and start moving north, putting it on the northernmost track, directly in the path of our train. The automobile continued moving, and when it was about centered on the northern track, it was struck by our train. It appeared the auto was still moving when the impact took place. . . . It was still daylight, clear with no visibility problems, and I believe the pavement was dry." The train consisted of a five engine unit with a three-man crew. The train operator immediately applied the emergency brakes but was unable to stop before striking the car.

There were no gates or other signal devices installed or required at the crossing, nor any evidence

of impairment of vision by vehicles approaching the crossing.

The collision caused the deaths of all six persons in the automobile including the decedent here involved (Krause), who occupied the left rear seat of the car. No one on the train was injured. A post-collision blood test of the automobile driver showed blood alcohol content of 20.20 (.202 percent). There are no other known eyewitnesses to the relevant facts of the collision nor any other known evidence bearing significantly on liability.

Defendant railroad has denied liability for the collision, but initially offered the relatively nominal sum of $15,000 to the administratrix as full settlement by joint tortfeasor release of both the wrongful death and survival claims, as set forth in the initial petition. After the first hearing before the court, the amount was increased to $25,000 as stated in the amended petition now before us. The administratrix testified that she wishes to accept the settlement and is strongly opposed under the circumstances to undertaking further litigation, and seeks allocation of the full settlement money to the wrongful death claim. She negotiated the initial settlement with defendant without counsel; both the initial petition and the amended petition were prepared and filed for her by counsel.

Decedent was 52 years of age at the time of his death and resided with his wife and two minor children in Meyersdale Borough. He was employed as a truck driver by a wholesale distributor in Meyersdale, and had been so employed for approximately four and one-half years prior to his death. He earned $200 per week. Debts, funeral and other expenses resulting from the death total $9,091.85.

## DISCUSSION

This controversy has its root in the distinctions between the cause of action for wrongful death, and the survival action for wrongful injury to a decedent, under Pennsylvania law. See McClinton v. White, 285 Pa. Super. 271, 427 A.2d 218 (1981), headnote 2. The distinctions are detailed in Ringler Estate, 36 Somerset L.J. 336, 29 Fid. Rep. 499 (1979) and editor's note thereto.[1] As there stated (341):

"(3) The action for wrongful death is a statutory creation, granting to the specified beneficiaries a right to recover *pecuniary losses* sustained by them by reason of decedent's death; . . . ." (Emphasis added.)

The wrongful death statute, Judicial Code §8301, 42 Pa.C.S., provides in subsection (b) thereof that "damages shall be distributed to the beneficiaries in the proportion they would take the personal estate of decedent in the case of intestacy"; nevertheless, in order to meet the requirement of "pecuniary loss" established by case law, the Superior Court has recently held that emancipated self-supporting children of decedent may not share in the recovery. Manning v. Cappelli, 270 Pa. Super. 207, 411 A.2d 252 (1979); see also Seymour v. Rossman, 449 Pa. 515, 297 A.2d 804 (1972). Thus, in the present case, insofar as the wrongful death action is concerned, decedent's dependent widow and minor children will take the full recovery to the exclusion

---

1. The requirement stated in Ringler that future earnings be reduced to present worth has since been abandoned in Kaczkowski v. Bolubasz, 491 Pa. 561, 421 A.2d 1027(1980) on the presumption that future interest earnings and future inflation will be offsetting.

of objectants who are decedent's emancipated adult self-supporting children.

The survival action is, however, a different sort of creature. The recovery there belongs to decedent's estate and is distributed to its beneficiaries irrespective of their pecuniary loss; hence, the widow and all seven of decedent's children, dependents and non-dependents alike, will share in damages recovered in the survival action; and since decedent died intestate, their shares will be governed by the intestate law. Ringler Estate, supra 340; McClinton v. White, supra, 277-278.

Since defendant railroad's settlement offer is expressly conditioned upon obtaining a joint tortfeasor release (42 Pa.C.S. §8326) for both the wrongful death claim and the survival claim, all parties, widow, dependent children and non-dependent children, will be precluded from any further recovery against defendant railroad if the settlement and compromise are approved; although that is satisfactory to the widow-administratrix, it is unsatisfactory to objectants.

For the foregoing reasons, objectants resist any action by the court which would apportion the entire settlement to the wrongful death action; they also object to the amount of the settlement as inadequate under the evidence presented. Their brief asks that we: (1) reject the settlement offer, and/or (2) if the settlement is approved, "place the settlement funds in escrow pending completion of the causes of action against all defendants [tortfeasors]", and make an equitable apportionment of the settlement money to both the wrongful death and survival claims. Thus, objectants apparently concede the jurisdiction and authority of the court over the proposed settlement, although they also object to determining the merits of the claims

against defendant railroad in this proceeding, specifically to our assignment to objectants of the burden of proof of the railroad's negligence in the collision if any they have, as denying "objectants their due process rights and access to the courts". It is not clear whether objectants are challenging the court's authority to pass on the merits of the claims against the railroad, or merely to assignment of a burden of proof to objectants and to the adequacy of the present record on the merits (causative negligence) against the railroad.

We conceive the issues to be:

(1) Does the court have jurisdiction to grant the amended petition as to both the wrongful death and survival claims?

(2) If, so, does the record adequately establish reasonableness of the settlement money?

(3) If so, how should the settlement money be allocated as between the wrongful death and survival claims?

## JURISDICTION

The court has jurisdiction over settlement of the wrongful death claim by virtue of the fact that two of its beneficiaries are minors, under Civil Rule 2206(a) which provides as follows:

"Rule 2206. Settlement, Compromise, Discontinuance and Judgment

"(a) No action for wrongful death in which a minor or an incompetent has an interest shall be discontinued nor shall the interest of a minor or an incompetent in any such action or in a judgment for damages recovered therein be compromised or settled until the court, upon petition of any party in interest, shall allow the discontinuance or approve the

compromise or settlement as being fair and equitable."[2]

The court also has jurisdiction over the survival claim under Probate Code §3323 which provides as follows:

"§3323. Compromise of controversies

"(a) In general.—Whenever it shall be proposed to compromise or settle any claim, whether in suit or not, by or against an estate, or to compromise or settle any question or dispute concerning the validity or construction of any governing instrument, or the distribution of all or any part of any estate, or any other controversy affecting any estate, the court, on petition by the personal representative or by any party in interest setting forth all the facts and circumstances, and after such notice as the court shall direct, aided if necessary by the report of a master, may enter a decree authorizing the compromise or settlement to be made.

"(b) Pending court actions.—

(1) Court order. Whenever it is desired to compromise or settle an action in which damages are sought to be recovered on behalf of an estate, any court or division thereof in which such action is pending and which has jurisdiction thereof may, upon oral motion by plaintiff's counsel of record in such action, or upon petition by the personal repre-

---

2. Compare Probate Code §5141 which provides as follows: §5141. Possession of real and personal property "The guardian of the estate of a minor appointed by the court until it is distributed or sold shall have the right to, and shall take possession of, maintain and administer, each real and personal asset of the minor to which his appointment extends, collect the rents and income from it, and make all reasonable expenditures necessary to preserve it. He shall also have the right to maintain any action with respect to such real or personal property of the minor."

sentative of such decedent, make an order approving such compromise or settlement. Such order may approve an agreement for the payment of counsel fees and other proper expenses incident to such action.

(2) Order not subject to collateral attack. The order of the court approving such compromise or settlement or an agreement for the payment of counsel fees and other expenses shall not be subject to collateral attack in the orphans' court division in the settlement of an estate.

(3) Filing copy of order; additional security. The personal representative shall file a copy of the order of the court approving such compromise or settlement in the office of the register of wills or clerk of the court having jurisdiction of the estate. When the personal representative has been required to give bond, he shall not receive the proceeds of any such compromise or settlement until the court of the county having jurisdiction of his estate has made an order excusing him from entering additional security or requiring additional security, and in the latter event, only after he has entered the additional security." See also: Ringler Estate, supra, 346; Zielinski v. McGovern, 17 D.&C.3d 16 (1980); Strickland Estate, 74 D.&C.2d 550 (1975); Wexler v. Philadelphia Transportation Company, 3 D.&C.3d 122 (1955).

Rule 2206(a) supra expressly states the criterion for judicial approval of settlement, that it be "fair and equitable". Probate Code §3323 supra expresses no criterion; but obviously the statute contemplates a judicial inquiry into the propriety of a proposed compromise or settlement by the estate, whether or not it is contested, consistent with the court's supervisory jurisdiction over decedents' estates, and an adjudication based thereon. Thus,

the court's function is judicial, not merely administrative. The court's function must be based on law and "established equitable principles", see Norris Estate, 329 Pa. 483, 490-491, 198 Atl. 142 (1938), that is, whether the proposal is "fair and reasonable under the circumstances", Prusak Estate, 29 D.&C.2d 329, 337 (1963), in which the court must exercise "independent judgment on the whole case", Norris Estate supra, 491. The personal representative of a decedent is a trustee of the wrongful death claim for all statutory beneficiaries, Ringler Estate supra, 347, and of all personal property of decedent including the survival cause of action for its beneficiaries, Meek Estate, 26 Somerset L. J. 185, 188, 53 D.&C.2d 207 (1971), and the court must take into consideration all interests involved. In Soares v. McClosky, 466 F.S. 703, 707 (E.D. Pa., 1979), the court describes §3323 supra as follows:

"This statutory provision serves several substantive ends: it protects potential beneficiaries, assures that the taxing authority gets its due, and shelters the decedent's representative from subsequent liability by eliciting a judicial determination whether a proposed settlement (or other termination) sufficiently protects the decedent's estate."[3]

Unamimity of assent to the proposed compromise is not essential, otherwise orderly administration of the estate could be prevented. See: Prusak Estate, supra, 338; Ringler Estate, supra, 346. So, there

---

3. Although there is some judicial language to the effect that the only purpose of §3323's predecessors was to protect the personal representative from surcharge, see Trumbauer Estate, 33 D.&C.2d 335 (1964), we think its purpose is for the protection of all interests concerned, as stated in Soares supra. See also footnote [4] infra. On the requirements for surcharge of a personal representative, see Berzinsky Estate, 40 Somerset L. J. 11 (1981).

must be some judicial evaluation of the merits. In contested petitions for approval of settlement there must be an adjudication of merits of the cause or causes of action proposed to be settled, and that adjudication must be based on an adequate evidentiary record. Clark Estate, 488 Pa. 1, 5, 410 A.2d 796 (1980). As stated in Norris Estate, supra, 491:

"Section 40, 20 P.S. §787 [now Probate Code §3323] contemplates a full and complete presentation of the facts and circumstances in order that the court may decree what is 'for the best interests. . . . of the estate of such decedent' [fair and reasonable under the circumstances, according to law and established equitable principles]."[4]

Thus, the criteria for judicial appraisal of a proposed compromise and settlement of the wrongful death claim and the survival claim are essentially identical; and both mandate a record of either uncontradicted pleadings, or of evidence sufficient to decide contested issues.

## ADEQUACY OF RECORD

As shown in the statement of facts ante, the sole cause of this collision and its consequences was the fact that the driver of the car, having a blood alcohol

---

4. Section 40 of the 1917 Act, cited and quoted in Norris Estate, supra (a predecessor to present code §3323), specified as the criterion for approval of settlement that the court be "satisfied that such compromise or settlement shall be for the best interests of such minor or of the estate of such decedent". The quoted language was deleted from §945 of the Act of 1949 P.L. 512, 20 P.S. §§320.513 and 320.945, §1-3 of the Act of 1953 P.L. 659, 20 P.S. §§1151-1153 and from present code §3323. As is apparent from our inclusion of the bracketed phrase quoted above, we equate the former express criterion with the present implied criterion.

content of .202 percent was clearly under the influence and unfit to drive[5], and drove so directly and closely in front of defendant's clearly visible moving train that it was impossible for the train to avoid collision notwithstanding prompt application of the train's brakes. Thus, the causative negligence belonged entirely to the automobile driver, and possibly to passengers for traveling with him in a noticeably intoxicated condition. There is no evidence of causative negligence of defendant. Hence, on the basis of the evidence presented, the proffered settlement of $25,000 by the railroad is fair and equitable to the beneficiaries of both the wrongful death and survival claims.

Objectants do not dispute the foregoing factual recital negating fault on the part of the train crew, but argue that it does not negate other negligence on the part of defendant railroad in maintaining the crossing by trimming brush and foliage along the right of way to allow approaching drivers clear sight of approaching trains and by failing to install appropriate warning devices, and by allowing operation of the train at the time by the fireman instead of the engineer, citing Buchecker v. Reading Co., 271 Pa. Super. 35, 412 A.2d 147 (1979). Undoubtedly, a viable cause of action can be grounded on such conduct, apart from operation of the train itself, if negligent. But none of the possibilities asserted is negligence per se, as Buchecker supra specifically holds in relation to warning devices; whether any of the acts or omissions advanced by objectants constitutes negligence depends on the surrounding circumstances, and there has been no showing of such relevant circumstances.

---

5. See: Commonwealth v. Giehll, 42 Somerset L. J. 271 (1983), Vehicle Code §3731(a) (1) and (4), 75 Pa. C.S.

Granted the relevance, possibly decisive, of such surrounding circumstances, the question boils down to burden of proof thereof: whether it rests upon petitioners or objectants. In the course of the proceedings we assigned the burden to objectants, and they challenge that ruling as earlier stated in this opinion. But we think that is a fair and equitable assignment of the burden in a case of this kind. See: Prusak Estate, supra. Petitioner having made a prima facie case exonerating defendant from negligence, objectants should prove the negligence they assert; this is equitable, consistent with law, and affords due process. Objectants having failed to take the opportunity offered to establish the circumstances relied on, it would be sheer speculation on our part to assume negligence of the railroad on the basis of the mere possibilities set forth.

## APPORTIONMENT

The settlement money of $25,000 is inadequate to pay the full amount of damages payable in both claims, were the evidence sufficient to establish liability. When liability is clearly established, plaintiffs are entitled to a "whole loaf of bread". Manges v. Strenski, 29 Somerset L. J. 166, 167 (1973). But since liability of the railroad cannot be established on this record, acceptance of a lesser sum is the better part of wisdom. Given decedent's age, employment, state of health, and a dependent widow and two minor children aged 15 and 8 years at the time of death, the sum of $25,000 is not an excessive amount for the wrongful death claim alone under present rules of law. Compare Ringler Estate, supra, 349. We therefore think the whole amount should be apportioned to the wrongful death claim on the principle that it is the "policy of the law to

favor the wrongful death beneficiaries over the estate beneficiaries". Ringler Estate, supra, 349. The award of damages in the survival claim based on the estate's loss of decedent's earnings during his normal life expectancy, must be reduced by the amount of probable money contributions awarded to the wrongful death beneficiaries (Ringler, supra, 344 at subparagraphs (b) and (c)), thus giving priority to the wrongful death claim over the survival claim; that priority is reinforced by the natural preference for compensation of needy dependents for loss over windfall inheritances.[6]

## CONCLUSION

The proposed settlement with defendant railroad is not only fair and reasonable, it would be unreasonable to require plaintiff to litigate the claims in light of the evidentiary record, and that would not be in the best interest of the minor children. Accordingly, we approve the proposed compromise and settlement by joint tortfeasor release of both wrongful death and survival actions from plaintiff administratrix to defendant railroad, and the full settlement money shall be allocated to the wrongful death claim and shall be distributed to its beneficiaries.

---

6. A similar preference was expressed by the court in Seymour v. Rossman, supra, 521, citing Armstrong v. Berk, 96 F.S. 182 (E.D., Pa. 1951), in limiting the wrongful death claim to dependents, as follows: "Where decedent is survived by two classes of relatives, one of which has suffered a pecuniary loss by reason of his death and the other of which has not, the class suffering the loss is entitled to the entire recovery to the exclusion of the class which has suffered no loss." Compare the language of Bortner v. Gladfelter, 302 Pa. Super. 492, 498, 448 A.2d 1386 (1982), that in the survival action the estate has a pecuniary loss.

This conclusion does not in any way affect the rights of the parties to pursue their claims against any alleged tortfeasor other than defendant railroad.

## ORDER

Now, December 7, 1983, counsel for petitioner-plaintiff shall promptly prepare and submit a proposed final decree which shall comply with this opinion and order, with Civil Rule 2206(c), with Probate Code §3323(b)(3), and placing costs on defendant.