NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2421
_____

CEOLA SMITH, INDIVIDUALLY AND AS ADMINISTRATRIX
OF THE ESTATE OF JARRED SMITH, DECEASED
EVANUEL TATE, Heir at law to the estate of Jarred Smith and beneficiary
v.

SANDALS RESORTS INTERNATIONAL, LTD.,
d/b/a SANDALS, A FOREIGN BUSINESS ENTITY;
UNIQUE VACATIONS INC.; POINCIANA RESORTS, LTD.,
A FOREIGN BUSINESS ENTITY;
HOSPITALITY PURVEYORS, INC.; COMMONWEALTH
OF PENNSYLVANIA DEPARTMENT OF WELFARE

Evanuel Tate,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 2-07-cv-03695)
Magistrate Judge: Honorable Timothy R. Rice[1]
_____

Submitted Under Third Circuit LAR 34.1(a)
(April 28, 2011)
_____

Before: SLOVITER, GREENAWAY, JR., and ROTH, Circuit Judges

_____

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to having Magistrate Judge
Timothy R. Rice conduct all proceedings and enter a final judgment.

1

_____

## OPINION
_____

GREENAWAY, JR., Circuit Judge

Appellant Evanuel Tate ("Tate") seeks review of the District Court's settlement distribution stemming from the accidental death of his son, Jarred Smith ("Decedent"). The issue before us is the allocation of the settlement funds between actions filed pursuant to the Wrongful Death Act[2] and the Survival Act.[3] For the reasons set forth below, we will affirm the District Court's order.

## I. Background

We write primarily for the benefit of the parties and recount only the essential facts.

Decedent is the son of Ceola Smith ("Smith") and Tate. On July 15, 2006, Decedent was injured on a water trampoline at Sandals Resort in Negril, Jamaica. As a result of those injuries, Decedent was rendered a quadriplegic. He could not speak or

_____

[2] The Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. § 8301, provides for a cause of action "to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another" for certain "beneficiaries."

[3] The Pennsylvania Survival Act, 42 Pa. C.S.A. § 8302, provides that "[a]ll causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants."

perform normal bodily functions. He lived on life support for eight months. Decedent ultimately died from his injuries on March 21, 2007. On September 5, 2007, Smith— individually and as Administratix of her son's estate—filed an action against Sandals Resorts International, Ltd. ("Sandals"), pursuant to the Wrongful Death Act and the Survival Act.

After extensive discovery and several settlement conferences, Smith and Sandals reached a settlement. Under the settlement, $6,166,666 would be allocated to the wrongful death action, and $353,333 to the survival action. On December 22, 2009, the District Court held a hearing to approve the settlement. At the hearing, Tate, appearing pro se, contested the proposed allocation of only $32,000 to him from the survival action and no compensation from the wrongful death action. Tate testified about his role in Decedent's life, and argued that his contributions over the course of Decedent's lifetime — $15,000 in child support and $3,000 for half of Decedent's funeral expenses — deserved a larger share of the settlement.[4] Based on Tate's testimony, the District Court doubled Tate's lifetime contributions to Decedent and calculated $36,000 (all from the

---

[4] The District Court "discredited Tate's testimony that he had an active familial relationship in [D]ecedent's life. For example, Tate claimed [D]ecedent did not play sports, when, in fact, [D]ecedent was a varsity letterman in basketball and football." (App. 08.)

3

survival action) as an appropriate amount to be allocated to Tate.[5]

The Court implored Tate, at the hearing, to retain counsel if he disagreed with the proposed allocation. Tate ultimately retained counsel. On January 14, 2010, Tate filed a motion to intervene, and posed objections to the settlement distributions.[6] Tate contended that he was entitled to the same settlement amount as Smith. He additionally argued that the District Court should have "reapportioned the settlement proceeds to allocate a greater percentage to the survival action." (App. 124.) The District Court granted the motion to intervene and held a hearing on March 16, 2010, to allow Tate to present new evidence relevant to his objections. Tate testified and presented testimony from various family members to demonstrate his participation in Decedent's life.[7] Specifically, Tate admitted that he had lied to the Court regarding material information

---

[5] Under the wrongful death action, $2,466,666 was allocated to counsel fees and expenses, and $3,700,000 to Smith. Under the survival action, $141,333 was allocated to counsel fees and expenses, $108,743 to the Commonwealth of Pennsylvania Department of Public Welfare for satisfaction of a Medicaid lien, $67,256 to Smith, and $36,000 to Tate.

[6] The District Court treated Tate's objections to the settlement distribution as a motion for reconsideration. "We review a denial of a motion for reconsideration for abuse of discretion, but we review the District Court's underlying legal determinations de novo and factual determinations for clear error." Howard Hess Dental Laboratories Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 246 (3d Cir. 2010).

[7] The record on appeal is unclear regarding which family members testified on Tate's behalf. Based on the excerpts from the transcript of March 16, 2010 hearing, it appears the following people testified: Hooks (Tate's brother), L. Tate (Tate's son), G. Evans (Decedent's brother-in-law), and R. Tate (Tate's son).

on at least three occasions during the prior December 22, 2009 hearing.[8]

The District Court found Tate's testimony lacked credibility. Further, the testimony of the family witnesses did not support Tate's claims of a familial affinity with Decedent. However, to account for Decedent's eight months of pain and suffering from the time of the accident until his death, the District Court increased the survival action damages from $353,333 to $1,000,000. This resulted in the following distribution:

Wrongful death action: $5,520,000, divided as follows:

Counsel fees and expenses: $2,208,000

Smith: $3,312,000

Survival action: $1,000,000, divided as follows:

Counsel fees and expenses: $400,000

Commonwealth of Pennsylvania Department of Public Welfare for satisfaction of the Medicaid Lien: $108,743.55

Surviving heir, Smith: $245,628.22

Surviving heir, Tate: $245, 628.23

## II. Jurisdiction & Standard of Review

The District Court had jurisdiction, pursuant to 28 U.S.C. § 1332. We have jurisdiction, pursuant to 28 U.S.C. § 1291.

---

[8] Tate admitted to lying to the District Court about paying child support (Supp. App. 65-68, 79), about Smith agreeing to split the settlement (Supp. App. 73-78), and about spending money on Decedent's education (Supp. App. 79-81).

Tate asks this Court to review the District Court's Order, which allocates $5,520,000 to the wrongful death action and $1,000,000 to the survival action. Facts found by a judge shall not be set aside "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." FED. R. CIV. P. 52(a). A finding of fact is clearly erroneous when, after reviewing the evidence, the court of appeals is "left with a definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985); Shore Regional High Sch. Bd. of Educ. v. P.S. ex rel. P.S., 381 F.3d 194, 199 (3d Cir. 2004).

We must, therefore, accept the factual determination of the fact finder unless it "either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supporting evidentiary data." DiFederico v. Rolm Co., 201 F.3d 200, 208 (3d Cir. 2000) (quoting Krasnov v. Dinan, 465 F.2d 1298, 1302 (3d Cir. 1972)). Additionally, "credibility determinations are for the finder of fact." Durham Life Ins. Co. v. Evans, 166 F.3d 139, 162 n.2 (3d Cir. 1999) (citing United States v. Bethancourt, 65 F.3d 1074, 1078 (3d Cir. 1995)).

A district court sitting in diversity must apply state substantive law and federal procedural law. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)). We review the District Court's decision de novo

6

for its application of Pennsylvania state law while sitting in diversity.[9] Kowalsky v. Long

Beach Twp., 72 F.3d 385, 388 (3d Cir. 1995); see also Salve Regina Coll. v. Russell, 499

U.S. 225, 231 (1991) ("[A] court of appeals should review *de novo* a district court's

determination of state law. As a general matter, of course, the courts of appeals are vested

with plenary appellate authority over final decisions of district courts."). Similarly, we

apply plenary review for the District Court's construction of a settlement agreement. See

Coltec Indus., Inc. v. Hobgood, 280 F.3d 262, 269 (3d Cir. 2002) ("This court applies

plenary review to a district court's construction of settlement agreements, but should

review a district court's interpretation of settlement agreements, as well as any

underlying factual findings, for clear error, as it would in reviewing a district court's

treatment of any other contract.").

## IV. Analysis

Tate contends he is entitled to half of the $6,520,000 settlement, by virtue of being

Decedent's biological father. (Supp. App. 99) Tate additionally argues that the District

Court erred in allocating 83% of the settlement to the wrongful death action and 17% to

the survival action.

---

[9] The parties urge us to review the District Court's division of the settlement proceeds between the wrongful death and survival actions for abuse of discretion. However, the abuse of discretion standard of review is used by state appellate courts in Pennsylvania. While a district court, sitting in diversity, appropriately applies state substantive law, see Chamberlain, 210 F.3d at 158, we have found no authority supporting the proposition that we should apply the state standard of review (abuse of discretion) in such cases.

A.  Distribution of wrongful death settlement

Tate argues that the District Court abused its discretion by not awarding him any of the proceeds from the wrongful death action.  Instead, Tate believes he should be awarded half of the proceeds from the wrongful death action.  (Appellant's Br. 5.)  The rationale of the Wrongful Death Act is "to compensate certain enumerated relatives of the deceased for the pecuniary loss occasioned to them through deprivation of the part of the earnings of the deceased which they would have received from him had he lived."  Manning v. Capelli, 411 A.2d 252, 254 (Pa. Super. Ct. 1979) (citing Berry v. Titus, 499 A.2d 661, 664 (Pa. Super. Ct. 1985)).  To recover from a wrongful death action, the plaintiff must demonstrate that (1) a family relation existed, and (2) a pecuniary loss occurred.  In re Estate of Wolfe, 915 A.2d 1197, 1200 (Pa. Super. Ct. 2006) (citing Gaydos v. Domabyl, 152 A. 549, 552 (Pa. 1930)).

A family relation exists between a child and parent "when a child receives from a parent services or maintenance or gifts with such reasonable frequency as to lead to an expectation of future enjoyment of these services, maintenance, or gifts."[10]  Gaydos, 152 A. at 551.  Once the plaintiff demonstrates there was a family relation, they must then show a pecuniary loss.  Id. at 552.

"Pecuniary loss has been defined to be a destruction of a reasonable expectation of

---

[10] "The persons entitled to recover damages for any injuries causing death shall be the husband, widow, children, or parents of the deceased, and no other relatives."  Manning, 411 A.2d at 254.

pecuniary advantage from the deceased.  It is not a matter of guess or conjecture, but must be grounded on reasonably continuous past acts or conduct of the deceased."  Id.  If the deceased is a child, courts will predict the future pecuniary loss by determining the "parent's contribution, financial and otherwise, to the development of the child while he was living."  Berry, 499 A.2d at 665.  Relatives who have not suffered a pecuniary loss are not in a family relation and may not share in the wrongful death proceeds.  Manning, 411 A.2d at 255.  Therefore, in a wrongful death action, if "decedent is survived by two classes of relatives, one of which has suffered a pecuniary loss by reason of his death and the other of which has not, the class suffering the loss is entitled to the entire recovery to the exclusion of the class which has suffered no loss."  Seymour v. Rossman, A.2d 804, 807 (Pa. 1972).

The District Court concluded that Tate did not have a family relation to Decedent, and that he (Tate) did not suffer pecuniary loss because of Decedent's death.  After two hearings, the District Court determined that Tate's financial and emotional support for Decedent was virtually nonexistent.  The District Court noted that Tate did not meet Decedent until he was eight; did not acknowledge paternity until Decedent was 17; and once he did acknowledge paternity, only saw Decedent sporadically.  Tate, according to his testimony, knew very little about his son.  He never spent a night under the same roof with his son, and only met with him by happenstance.  Even during Decedent's hospitalization following his accident, Tate's interaction with his son was limited, and did

9

not include any discussions with Decedent's doctors regarding Decedent's care or prognosis.

These findings are strongly supported by the record. As such, we conclude that the District Court's factual determinations were not clearly erroneous. Considering these facts, we agree with the District Court's determination that, based on Pennsylvania law, Tate did not have a family relation to Decedent and consequently could not, and did not, suffer pecuniary loss. See Saunders v. Consol. Rail Corp., 632 F. Supp. 551, 553 (E.D. Pa. 1986) (finding no pecuniary loss established pursuant to Pennsylvania Wrongful Death Act where father had extremely limited contact with children for eight years, despite increasing contact the summer before his death.).

Our de novo review of the District Court's distribution of the wrongful death settlement leads us to conclude there was no error. The distribution of the Wrongful Death Act proceeds should not be disturbed.

B. Apportioning settlement proceeds between wrongful death and survival actions

Tate argues that the District Court failed to properly apportion the settlement proceeds between the wrongful death action and the survival action. (Appellant's Br. 5.) He contends that the District Court's apportionment purposefully precludes him from sharing in a greater proportion of the settlement proceeds. (Appellant's Br. 5.) Tate cites

10

Pennsylvania's Suggested Standard Civil Jury Instructions ("SSJI") as dispositive of this argument.[11]

Despite their common roots in the law of negligence, the claims under the Wrongful Death Act and the Survival Act are separate and distinct. Kiser v. Schulte, 648 A.2d 1, 4 (Pa. 1994); Groh v. Philadelphia Elec. Co., 271 A.2d 265, 269 (Pa. 1970). A wrongful death action "may be brought by the personal representative of those persons entitled to receive damages for wrongful death under the statute." Kiser, 648 A.2d at 4 (citing Tulewicz v. S.E. Pa. Transp. Auth., 606 A.2d 427, 429 (Pa. 1992)). "Wrongful death damages are established for the purpose of compensating the spouse, children, or parents of a deceased for pecuniary loss they have sustained as a result of the death of the decedent." Kiser, 648 A.2d at 4 (citing Tulewicz, 606 A.2d at 429). "The damages recoverable in a wrongful death action include the present value of the services the deceased would have rendered to the family, had she lived, as well as funeral and medical expenses." Kiser, 648 A.2d at 4 (citing Burkett v. George, 545 A.2d 985, 987 (Pa. Commw. Ct. 1988)).

"A survival action, on the other hand, is brought by the administrator of the decedent's estate in order to recover the loss to the estate of the decedent resulting from

---

[11] It is unclear what Tate's rationale is for relying on the SSJI. The SSJI simply set forth the standards established by case law. It is not an independent legal basis requiring this Court to act in a particular manner.

11

the tort." Kiser, 648 A.2d at 4 (citing Tulewicz, 606 A.2d at 429). "The measure of

damages awarded in a survival action include the decedent's pain and suffering, the loss

of gross earning power from the date of injury until death, and the loss of his earning

power—less personal maintenance expenses, from the time of death through his

estimated working life span." Kiser, 648 A.2d at 4 (citing Slaseman v. Myers, 455 A.2d

1213, 1217 (Pa. Super. Ct. 1983)).

In cases involving survival actions, the trier of fact determines the loss to the

decedent's estate. See Bortner v. Gladfelter, 448 A.2d 1386, 1389 (Pa. Super. Ct. 1982).

It is a matter of judgment as to what will fairly compensate a plaintiff or the estate for the

pain and suffering endured. Slaseman v. Myers, 455 A.2d 1213, 1218 (Pa. Super. Ct.

1983) (citing Gallagher v. Four Winds Motel-Hotel, 335 A.2d 394, 397 (Pa. 1975)). The

District Court suitably increased the survival action from $353,333.33 to $1,000,000 to

account for the 250 days of Decedent's pain and suffering.[12] We find no clear error with

this modification. The allocation of funds from the wrongful death action recovery to the

survival action recovery is reasonable because it adequately accounts for the eight months

---

[12] The District Court stated that "[i]n balancing the interests of properly compensating [D]ecedent's estate and preventing windfall inheritances, Pennsylvania law requir[ed] [it] to allocate $1 million of the settlement proceeds to the survival action. Any greater amount would result in an unjust windfall to Tate."

Decedent spent as a quadriplegic before his untimely death.[13]

Additionally, the District Court correctly determined that "Pennsylvania policy favors wrongful death beneficiaries over estate beneficiaries." (App. 17.)  See Krause v. B & O R.R., 33 Pa. D. & C.3d 458, 471 (Pa. Com. Pl. 1983).  Here, the District Court noted that although Decedent's "monetary contributions to Smith were minimal, the services, society, and comfort [D]ecedent brought to her were immeasurable." (App. 17.) The District Court found that Decedent "provided Smith with indefinable acts of tender solicitude, industry, and usefulness," and that he "not only help[ed] Smith with her household and help[ed] raise her two grandsons, he provided her immeasurable comfort and companionship." (Id.)  The District Court also concluded that based on Decedent's relationship with Smith and her grandchildren, "he would have repaid her for guiding him in all his achievements by using his earnings to continue to support [Smith] and her grandchildren." (Id.)

The District Court's apportionment of a substantially larger portion of the settlement proceeds to the wrongful death action is not clearly erroneous and is consistent with Pennsylvania law.

---

[13] The District Court concluded that the settlement allocation it had "approved on December 22, 2009 failed to account for the 250 days of [D]ecedent's pain and suffering and his future earning potential."

13

## V. Conclusion

For the reasons set forth above, the District Court's determination that Tate did not have a family relation with Decedent was not clearly erroneous. Tate did not suffer a pecuniary loss. Further, the District Court did not err in its allocation of the settlement funds between the wrongful death and survival actions. We will affirm the District Court's order.

14